**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank Peter BALISTRIERI,
Defendant-Appellant.**

No. 78–2512.

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 1979.

Decided Oct. 2, 1979.

Rehearing and Rehearing In Banc
Denied Dec. 6, 1979.

---

Cordell Siegel, St. Louis, Mo., for defendant-appellant.

Michael J. Trost, Deputy U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT, Circuit Judge, MOORE, Senior Circuit Judge,* and TONE, Circuit Judge.

* Honorable Leonard P. Moore, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, is sitting by designation.

MOORE, Senior Circuit Judge:

This appeal presents an interesting issue of first impression in this court: On a motion in the nature of a writ of error coram nobis to vacate a judgment of conviction in a criminal case, should the district court apply the Federal Rules of Civil Procedure or the Rules of Criminal Procedure? We believe that the district court may draw from both sets of rules.

Frank Peter Balistrieri appeals from the denial of his motion in the nature of a writ of error coram nobis (hereinafter referred to as a "coram nobis motion") by order of the United States District Court for the Southern District of Illinois (Honorable J. Waldo Ackerman, District Judge), filed November 14, 1978. Balistrieri also seeks review of interlocutory orders of the district court filed December 3, 1976 (quashing Balistrieri's attempt to use discovery devices authorized by the Federal Rules of Civil Procedure, reported at 423 F.Supp. 793); and September 14, 1977 (partially granting and partially denying Balistrieri's discovery request under Rule 16, F.R.Cr.P.). We affirm the orders of the district court.

Balistrieri was convicted in 1967 on two counts of filing false and fraudulent income tax returns after a trial before a jury. He was sentenced to two concurrent two-year prison terms. This court affirmed the conviction in *United States v. Balistrieri*, 403 F.2d 472 (7th Cir. 1968). Balistrieri's conviction came before us a second time after he discovered an instance of illegal government electronic surveillance of him. See the description of the procedural history of the case in 436 F.2d 1212 (7th Cir. 1971).

In February of 1975, Balistrieri learned of another instance of electronic surveillance which might have affected his trial. A government affidavit in an unrelated criminal case disclosed in 1975 that the Federal Bureau of Investigation ("FBI") had maintained electronic surveillance of Walter Felix Brocca's restaurant in Milwaukee, Wisconsin from June 10 to December 30, 1964. Balistrieri reasoned that since he had frequented Brocca's restaurant during that time, it was likely that some of his conver-

sations with other persons at the restaurant had been overheard. Balistrieri filed his coram nobis motion on January 30, 1976, alleging that this surveillance provided the government with evidence or leads to evidence used at his trial and that the failure of the government to disclose the existence of the surveillance prejudiced him at trial.

The government's response to the motion contained an affidavit by FBI Special Agent Geir N. Magnuson, who stated that the record tapes of the surveillance had been destroyed, no transcripts had been prepared, and the only remaining records were the monitoring logs. The affidavit went on to reveal two occasions on which Balistrieri had been monitored and to declare that Balistrieri had not been monitored on any other occasion. Balistrieri came back with extensive requests for admissions (Rule 36), interrogatories (Rule 35), and production of documents (Rule 34) under the Federal Rules of Civil Procedure. He also served notice of the depositions of individuals who had been witnesses at his 1967 trial. The discovery requests sought details concerning the origin, installation, and operation of the electronic surveillance at Brocca's restaurant. The government filed a motion to quash this discovery on November 4, 1976; thus we come to the first order challenged by Balistrieri.

The district court granted the motion to quash on the ground that since a coram nobis motion is a step in the criminal case and not a separate civil action, the Rules of Civil Procedure were inapplicable to proceedings on the coram nobis motion and that Balistrieri was limited to the discovery available under the Rules of Criminal Procedure. To reach its decision the district court canvassed the cases dealing with coram nobis motions. The only case directly on point was *United States v. Marcello*, 202 F.Supp. 694 (E.D.La.1962), *aff'd on other grounds*, 328 F.2d 961 (5th Cir.), *cert. denied*, 377 U.S. 992, 84 S.Ct. 1916, 12 L.Ed.2d 1045 (1964), which held the discovery provisions of the Federal Rules of Civil Procedure inapplicable to a coram nobis motion. In reaching the result that both civil and

criminal rules apply, it may be helpful to discuss the historical background of the motion in the nature of a writ of error coram nobis.

The ancient writ of error coram nobis was used to enable a court of first resort to correct its own errors. *Pickett's Heirs v. Legerwood,* 32 U.S. (7 Pet.) 144, 147, 8 L.Ed. 638 (1833); see generally the discussion and authorities cited in 7 Moore's Federal Practice ¶ 60.14 (1979). The writ had its utility at common law in both civil and criminal cases. *United States v. Mayer,* 235 U.S. 55, 67–69, 35 S.Ct. 16, 59 L.Ed. 129 (1914). However, in 1946, Rule 60(b), F.R. Civ.P., was amended, abolishing writs of error coram nobis and other common law forms of relief from judgments.[1] Nevertheless, the ancient writ of error coram nobis rose phoenix-like from the ashes of American jurisprudence through the benign intervention of the Supreme Court in *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

In *Morgan* the respondent was a state prisoner who had been sentenced to a longer term of imprisonment on account of a prior federal conviction. Morgan filed an application for a writ of error coram nobis and gave notice of a motion for the writ in the United States District Court where his first conviction had occurred, all in conformance with the ancient usages of the writ. The district court treated the proceeding as a motion under 28 U.S.C. § 2255 (1976)[2] and refused relief because the applicant was no longer in federal custody and thus was outside the terms of § 2255.

The Supreme Court held that although the writ of error coram nobis had been abolished in civil cases, it was available for review of a criminal conviction when § 2255 did not apply. Authority for use of the writ was found in 28 U.S.C. § 1651(a),[3] the all-writs section of the Judicial Code. Balistrieri's motion in this case derives its legitimacy directly from *United States v. Morgan.*

The *Morgan* Court did not specify what rules of procedure should apply to the newly revitalized motion in the nature of a writ of error coram nobis. Courts which have had to decide this question have focused on footnote 4[4] of *Morgan* where the Court said:

1. The pertinent part of Rule 60(b) reads:

"This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

2. The first part of § 2255 reads:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or·that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

3. Section 1651(a) reads:

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

4. The full text of footnote 4 of *Morgan* reads:

"Such a motion is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding. *Kurtz v. Moffitt,* 115 U.S. 487, 494 [6 S.Ct. 148, 29 L.Ed. 458.] While at common law the writ of error *coram nobis* was issued out of chancery like other writs, Stephens, Principles of Pleading 3d Amer. ed., 142 the procedure by motion in the case is now the accepted American practice. *Pickett's Heirs v. Legerwood* [32 U.S.] (7 Pet.), 144, 147 [8 L.Ed. 638]; *Wetmore v. Karrick,* 205 U.S. 141, 151 [27 S.Ct. 434, 51 L.Ed. 745]; *United States v. Mayer,* 235 U.S. 55, 67 [35 S.Ct. 16, 59 L.Ed. 129.] As it is such a step, we do not think that Rule 60(b), Fed.Rules Civ.Proc., expressly abolishing the writ of error *coram nobis* in civil cases, applies. This motion is of the same general character as one under

"Such a motion is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding." 346 U.S. at 505 n. 4, 74 S.Ct. at 249 n. 4.

The court below based its decision on this language, as did the court in *United States v. Marcello, supra*. Other courts have echoed the *Morgan* language: *McDonald v. United States*, 356 F.2d 980 (10th Cir. 1966); *Abel v. Tinsley*, 338 F.2d 514 (10th Cir. 1964); *Peterson v. State of Missouri*, 355 F.Supp. 1371 (W.D.Mo.1973). None of these other courts, however, had to decide which rules of procedure to apply.

The leading case in which a court had to decide whether to apply a civil rule or a criminal rule is *United States v. Keogh*, 391 F.2d 138 (2d Cir. 1968).[5] There the appellant had filed his notice of appeal twenty-seven days after his petition for a writ of error coram nobis had been denied. F.R. Civ.P. 73(a) allowed 60 days to file a notice of appeal and F.R.Cr.P. 37(a)(2) allowed only 10 days. The government argued that the criminal rule was applicable on the basis of footnote 4 of *United States v. Morgan, supra*. Judge Friendly dispatched this argument by noting that *Morgan's* footnote 4 was designed only to preserve coram nobis relief in a criminal case from the Rule 60(b) abolition of coram nobis writs in "suits of a civil nature", to which Rule 60 applied by virtue of F.R.Civ.P. 1. 391 F.2d at 140. In fact, as Judge Friendly pointed out, the *Morgan* footnote goes on to say that the coram nobis motion "is of the same general character as one under 28 U.S.C. § 2255". Taking our cue from the *Morgan* footnote, we now consider the similarity between a coram nobis motion and a motion under § 2255.

Since the legislative history of § 2255 is well detailed in *United States v. Hayman*, 342 U.S. 205, 214–23, 72 S.Ct. 263, 96 L.Ed. 232 (1951), we will present only the major points here. Section 2255 was written to solve procedural problems which arose from a growing number of habeas corpus suits by federal prisoners. One of these problems was the difficulty of obtaining the testimony of witnesses in the district where a federal prisoner was confined, as is necessary in a habeas corpus action. Therefore, the judicial conference drafted a provision which allowed a federal prisoner to move to vacate, set aside, or correct the sentence in the courts which had imposed the sentences, where witnesses with knowledge of the trial were more likely to be available. The device of a motion in the sentencing court was of the same general nature as a writ of error coram nobis because it allowed the sentencing court to correct its own errors. *See* Judicial Conference Statement quoted in *United States v. Hayman, supra*, 342 U.S. at 216–17, 72 S.Ct. 263.

Section 2255 was passed in 1948, accompanied by a Reviser's Note quoted in part here:

"This section restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis. It provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus." 28 U.S.C. § 2255.

The *Morgan* decision recognized the similarity between § 2255 and coram nobis as expressed in the Reviser's Note and, in effect, made a coram nobis motion an extension of § 2255 in cases where the applicant was no longer a federal prisoner. This close relationship has also been accepted in *Neely v. United States*, 546 F.2d 1059 (3d Cir. 1976) (applying the civil class action rules to a proceeding similar to a coram nobis motion), and *United States v. Tyler*, 413 F.Supp. 1403 (N.D.Fla.1976).

Section 2255 has authoritatively been characterized as "an independent civil suit". *Heflin v. United States*, 358 U.S. 415, 418 n. 7, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). Thus, to the extent a coram nobis motion is like a § 2255 motion, the former is

---

28 U.S.C. § 2255. See Reviser's Note. *Cf. United States v. Kerschman*, 201 F.2d 682, 684. And see contra to the above note, *People v. Kemnetz*, 296 Ill.App. 119, 15 N.E.2d 883."

5. But see *United States v. Mills*, 430 F.2d 526 (8th Cir. 1970), *cert. denied*, 400 U.S. 1023, 91 S.Ct. 589, 27 L.Ed.2d 636 (1971).

also civil in nature. It is apparent, then, that a coram nobis motion is a step in a criminal proceeding yet is, at the same time, civil in nature and subject to the civil rules of procedure. Judge Scott well stated this point most clearly in *United States v. Tyler, supra:*

> "Coram nobis is, then, a hybrid action: quasi-civil and quasi-criminal. It is a remedy available in a criminal case to correct fundamental errors that render that proceeding irregular and its judgment invalid. Nevertheless, because it is a postjudgment attack upon a conviction by a defendant no longer in any form of custody, and insofar as it is still governed by civil rules, forms and pleadings, its character reflects the vestiges of its civil origins: the intrinsic all-writs jurisdiction of the Court." 413 F.Supp. at 1404–05 (citations omitted).

On February 1, 1977, new rules governing § 2255 proceedings became effective for all United States District Courts. 28 U.S.C. § 2255 (1976). Inasmuch as we have already remarked on the similarity between § 2255 and coram nobis, we deem these rules to be highly persuasive in deciding how coram nobis motions should be conducted, especially since the rules were proposed by the Supreme Court and approved by Congress. Rule 6 of the § 2255 rules states in part:

> "A party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."

The Advisory Committee Note to Rule 6 reveals that use of both sets of rules is authorized because "of the nature of a § 2255 motion as a continuing part of the criminal proceeding . . . as well as a remedy analogous to habeas corpus by state prisoners". This view not only strengthens the similarity of § 2255 and coram nobis but also reaffirms our view that a coram nobis motion partakes of the nature of both a criminal and civil proceeding. It is within the district court's discretion to apply the appropriate rules on the basis of the facts of each case.

We conclude that the court was acting well within its discretion in limiting the scope of discovery to be afforded to Balistrieri. Rule 26(c), F.R.Civ.P., permits a party from whom discovery is sought to move for a protective order and authorizes the district court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . ." The protective order may limit the scope or manner of discovery or limit the number of persons who see the discovered material. Coram nobis motions, insofar as they are sometimes made long after the judgment of conviction was rendered, are peculiarly appropriate candidates for use of the district court's discretion under Rule 26(c). The district court's decision to quash Balistrieri's discovery requests was within its discretion under the rule, especially in light of the breadth of the discovery requests in relation to the rather narrow ground of illegal surveillance upon which the coram nobis motion was based.

Rule 16, F.R.Cr.P., is an unsatisfactory vehicle for discovery requests in proceedings on a coram nobis motion. Facts which affect the validity of the conviction or sentence are unlikely to be found solely within the narrow scope of discovery allowed by Rule 16. On a coram nobis motion, statements made by government witnesses or prospective witnesses, expressly protected from discovery by Rule 16(a)(2), may be highly relevant to the applicant's ability to prove his allegations. For reasons of policy, as well as the consistency of legal concepts, it is necessary to grant applicants the scope of discovery under civil rules and, at the same time, assure the government and others of due protection from burdens arising from participation in old criminal proceedings. The district court should consider the amount of time which has elapsed since the trial, the

burden of discovery on the government and witnesses, and the nature of the applicant's claims in deciding on the scope of discovery at each stage of the coram nobis proceedings. If relevant evidence is revealed by discovery which only lightly burdens the government, the court retains the option of allowing more extensive requests in order to see if there is more evidence to be found. However, if examination of only the most relevant materials fails to turn over any relevant new stones, the coram nobis proceedings may be brought to a speedy conclusion.

This case fits the latter category. Judge Ackerman did allow Balistrieri to obtain *in camera* production of the monitoring logs for the surveillance at Brocca's restaurant, the only evidence of the surveillance which remained. The court's *in camera* inspection revealed only two occasions, not previously disclosed to Balistrieri, when his conversations at the restaurant had been overheard. Because, as we will explain below, none of these instances of surveillance could possibly have affected Balistrieri's convictions for income tax evasion, the district court quite properly decided to end the discovery process in its order of September 4, 1977. Hence, that order is affirmed.

With respect to the merits of the coram nobis motion, Balistrieri's contentions focused on the fact that the FBI had secretly intruded upon a conversation with his attorney Dominic Frinzi on one occasion at Brocca's restaurant. The restaurant discussion occurred more than two years prior to Balistrieri's trial for tax evasion and involved the attorney who defended him in that trial. Balistrieri's argument is that this illegal intrusion denied him the effective assistance of counsel.

▮ Although illegal electronic eavesdropping by the government on attorney-client conversations may be a violation of a defendant's Sixth Amendment rights, and, therefore, grounds for a new trial in some cases, *Coplon v. United States,* 89 U.S.App. D.C. 103, 191 F.2d 749 (D.C.Cir. 1951), *cert. denied,* 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952), the facts of this case do not warrant such treatment. The surveillance

at Brocca's restaurant was not directed at Balistrieri. The persons who conducted the investigation of Balistrieri's tax affairs did not know about the surveillance because the FBI did not widely disclose their operations. The monitored conversations had nothing to do with Balistrieri's tax affairs or any legal matter affecting him. A third person was present. Even if the attorney-client privilege attached to this conversation, a dubious proposition in itself, the intrusion into the conversation cannot be deemed to have denied Balistrieri the effective assistance of counsel at his criminal trial. Balistrieri was not prejudiced and we find no reason to set aside his conviction.

A claim of perjury by the government's witnesses has not been pressed on appeal. We merely note our agreement with the district court's conclusion that Balistrieri's allegations were merely speculative and warranted no further investigation.

We affirm denial of the motion in the nature of a writ of error coram nobis and denial of appellant's discovery requests.