UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony SCHERER, Jr.,
Defendant-Appellant.

No. 81–1408.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1981.

Decided Jan. 26, 1982.

Rehearing and Rehearing En Banc Denied
March 1, 1982.

Certiorari Denied June 14, 1982.
See 102 S.Ct. 2935.

Before SPRECHER and WOOD, Circuit Judges, and BROWN, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant, Anthony J. Scherer, Jr., appeals from the order of the district court, which denied a petition to vacate his conviction for certain violations of the Gun Control Act of 1968.[1]

## I.

In 1974, Scherer was found guilty of nine counts of failure to record the disposition of firearms in violation of the Gun Control Act, and was sentenced to concurrent two-year terms for each count. This court affirmed. *United States v. Scherer*, 523 F.2d 371 (7th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1108, 47 L.Ed.2d 315 (1976) (*Scherer I*). In 1976, the trial court granted defendant's motions for reduction of sentence with the result that Scherer's incarceration lasted from March 19 to May 26, 1976, followed by a three year period of probation which expired on May 17, 1979. In July, 1978, while still on probation, Scherer petitioned the trial court for habeas corpus relief under 28 U.S.C. § 2255, alleging violations of his Fourth, Fifth, and Sixth Amendment rights. The district court denied the petition, and this court affirmed in an unpublished order. *United States v. Scherer*, 622 F.2d 592 (7th Cir. 1980), *cert. denied*, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980) (*Scherer II*).

Scherer again petitioned the trial court in June, 1980, seeking to have his conviction vacated. He based the petition on Fed.R. Crim.P. 35, for correction of an illegal sentence; 28 U.S.C. § 2255, as a petition for habeas relief; the All Writs Act, 28 U.S.C. § 1651, as a petition for a writ of error *coram nobis*; and the common law writ of error *coram nobis*. Scherer argued that newly discovered evidence, not disclosed to

Lonny Benn Ogus, Chicago, Ill., for defendant-appellant.

Michael Wise, Robert Walter Tarun, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

---

* The Honorable Wesley E. Brown, Senior District Judge of the United States District Court for the District of Kansas, is sitting by designation.

1. 18 U.S.C. § 922(m).

him by the government at trial, recently came to light pursuant to discovery conducted in a related civil forfeiture action, *United States v. Misc. Firearms*, No. 74 C 877 (N.D.Ill., filed March 28, 1974).[2] Scherer claimed that this new evidence showed that perjured evidence was used against him at trial, that the act for which he was convicted was not a crime, and that several warrantless searches of his property in 1972 were unlawful under the Fourth Amendment. He also included several other allegations of irregularity in the events leading to his arrest and prosecution. Scherer asserted that this new evidence demonstrated a fundamental flaw in his trial and warranted vacating his conviction.

The district court, finding Fed.R.Crim.P. 35[3] and 28 U.S.C. § 2255[4] inapplicable, treated Scherer's petition as one for a writ of error *coram nobis*. On March 3, 1981, the court denied relief, finding that Scherer's new evidence failed to demonstrate such fundamental error in the proceedings against him as to warrant the granting of the writ and vacating his conviction. Scherer appealed to this court.

### II.

In its modern treatment, the writ of error *coram nobis* is available in a criminal proceeding and is of the same general character as habeas corpus relief under 28 U.S.C. § 2255. *United States v. Morgan*, 346 U.S. 502, 506 n.4, 74 S.Ct. 247, 249 n.4, 98 L.Ed. 248 (1954); *United States v. Keogh*, 391 F.2d 138, 140 (2d Cir. 1968). The writ will not lie for every error discovered after judgment. It is an extraordinary remedy and may be used to vacate a judgment of conviction "for errors of fact

... where the errors [are] of the most fundamental character, that is, such as render the proceeding itself irregular and invalid." *United States v. Addonizio*, 442 U.S. 178, 186, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979); *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 19, 59 L.Ed. 129 (1914); *United States v. Dellinger*, 657 F.2d 140, 144 (7th Cir. 1981). Coram nobis review may offer a unique possibility of relief since, unlike § 2255 habeas relief, it remains available to a defendant after he has been released from custody. *United States v. Dellinger*, 657 F.2d at 144; *United States v. Balistrieri*, 606 F.2d 216, 220 (7th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). It is presumed that the proceedings leading to conviction were correct, and the burden is on the petitioner to demonstrate that "the asserted error is jurisdictional or constitutional, [and] involves an error of law that results in a complete miscarriage of justice." *Morgan*, 346 U.S. at 512, 74 S.Ct. at 253; *United States v. Hedman, et al.*, 655 F.2d 813, 815 (7th Cir. 1981). To the extent that the petition is based on newly discovered evidence, the defendant must also show that due diligence on his part could not have revealed the evidence prior to trial. *Hedman*, 655 F.2d at 814. Further, the new evidence must be such that, if known at trial, it would have allowed the defendant to present his case in a manner which would have likely led to a different result. *Keogh*, 391 F.2d at 148; *Bateman v. United States*, 277 F.2d 65, 68 (7th Cir. 1960).

### III.

Scherer argues that certain documents, undisclosed by the government at trial, but

**2.** The district court in *Scherer II* did not consider the alleged new evidence and we refused to consider it on appeal because the evidence was not presented to the district court. *Scherer II*, No. 79–1342, slip op. at 5 (7th Cir. May 21, 1980).

**3.** The district court found that Fed.R.Crim.P. 35 was inapplicable because the Rule has been construed "[t]o permit correction at any time of an illegal sentence, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence." *Hill v. United States*, 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7

L.Ed.2d 417 (1962). Scherer does not claim that his sentence was not in conformity with the statute under which he was convicted. Moreover, the petitioner has not complied with the 120 day time period for filing under Rule 35(b).

**4.** The district court found 28 U.S.C. § 2255 inapplicable because Scherer failed to satisfy the custody requirement. He has completed both his sentence and his period of probation. *Ansourian v. United States*, 240 F.Supp. 864 (S.D.N.Y.1965), *cert. denied*, 383 U.S. 949, 86 S.Ct. 1208, 16 L.Ed.2d 212 (1966).

recently revealed by discovery in a related civil case, demonstrate fundamental error calling for *coram nobis* relief. The first of these documents consists of a four page affidavit from a Bureau of Alcohol, Tobacco and Firearms ("BATF") agent. The newly discovered document appears to contain the original notes of Trial Exhibit 30, which was offered and admitted at trial. Scherer contends, however, that Exhibit 30 is a perjured document since it is dated October 5, 1972, but describes an event of October 12, 1972. Moreover, while Exhibit 30 is dated October 5, 1972, the newly discovered document has a December 11, 1972 date crossed out with "October 5, 1972" inserted.[5] Scherer contends that he was prevented from effective cross-examination because he could have used the document to cross-examine a BATF agent.

While some differences do exist between the two documents, we agree with the district court that there are "no substantive differences which would have prejudiced petitioner at trial." *United States v. Scherer*, No. 74 CR 99 at 5 (N.D.Ill. March 3, 1981) (*Scherer III*). The existence of minor differences does not amount to perjury. *Anderson v. United States*, 403 F.2d 451 (7th Cir. 1968), *cert. denied*, 394 U.S. 903, 89 S.Ct. 1009, 22 L.Ed.2d 215 (1969); *United States v. Spadafora*, 200 F.2d 140 (7th Cir. 1952). Moreover, Scherer's contention that the date discrepancy could have been used for cross-examination purposes fails. Exhibit 30, dated October 5 and containing a description of events on October 12, was available at trial. Therefore, defendant's discovery of the discrepancy on the newly discovered document brings no new significant facts to this case and does not warrant *coram nobis* relief.

Moreover, Scherer argues that his trial attorney probably did not make effective use of Exhibit 30 for impeachment purposes because the document contains a reference to his attorney as a "shyster" and relates events which Scherer claims reveal a conflict of interest on the attorney's part. If the newly discovered document had been available at trial, he asserts, more effective cross-examination may have been possible, since the newly discovered document does not contain these references. Even if it was clear how the newly discovered document could be effectively used for impeachment purposes, Scherer overlooks the principle that new evidence which is merely impeaching is not grounds for granting a new trial. *See Hedman*, 655 F.2d at 815; *United States v. Robinson*, 585 F.2d 274, 278 n.4 (7th Cir. 1978) *(en banc), cert. denied*, 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051 (1979). Further, defendant does not cite the contents of the document as evidence of any new information, nor does he show that it is material to the issues involved in this case. Speculation as to what probably occurred or what may have been possible does not lead to the conclusion that Scherer's trial was so fundamentally flawed as to constitute a miscarriage of justice, *Hedman*, 655 F.2d at 815, or that the newly discovered document would have allowed him to present his case in a manner likely to produce a different result. *Bateman*, 277 F.2d at 68. *See United States v. Balistrieri*, 606 F.2d 216, 222 (7th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980).

Scherer also discovered eleven pages of handwritten notes of unidentified origin in a government file. He urges that since these notes may pertain to his case, he should now have the opportunity to learn who wrote them, when they were made, and whether they contain information which might have been material to his case. It is unclear, however, what argument Scherer is making. If, on one hand, he argues that he should now have the opportunity to discover whether his speculations regarding the notes' relevance to his case are true, a petition for a writ of error

---

**5.** Other discrepancies that Scherer cites are: 1) On the second page of the newly discovered documents, the date crossed out of the statement is September 25, 1972.

2) A time was changed from 12:00 to 11:30.
3) Facts contained in one document are omitted in the other documents and vice versa.

*coram nobis* may not be used ."to allow a defendant to fish for facts that may or may not exist and may or may not justify the motion in the first instance." *United States v. Balistrieri,* 423 F.Supp. 793, 795 (S.D.Ill.1976), *aff'd,* 606 F.2d 216 (7th Cir. 1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). If, on the other hand, he argues that his speculations alone—that these pages may refer to him and may contain evidence material to his case—call for vacating his conviction, then Scherer "offer[s] no new evidence at all, but only new suspicions," and "[t]he existence of *some* new evidence is a prerequisite to granting a new trial on the basis of newly discovered evidence." *Hedman,* 655 F.2d at 816 (emphasis in original).

### IV.

Scherer next renews an argument he made unsuccessfully on his direct appeal. On direct appeal, he relied on Industry Circular 72–30, released by the Treasury Department in 1972, which provides, "Personal firearms on licensed premises which are segregated from firearms held for sale and which are appropriately identified as not being for sale need not be entered in the dealer's records." Scherer claimed that the weapons seized were a part of his private collection and were stored in his home rather than his business office. Therefore, he argued, he was exempt from recording their sale or disposition. This court found, however, that "it is immaterial whether the weapons sold were originally acquired for Scherer's personal use or for business purposes. They became a part of his business inventory the moment they were placed on the market for resale." *Scherer I,* 523 F.2d at 374. This holding prevents dealers from easily circumventing the law by accumulating "personal use" weapons to make otherwise unlawful sales. *United States v. Currier,* 621 F.2d 7, 9 (1st Cir. 1980).

In this proceeding, Scherer submits a new document and again urges this court to read a "personal" versus "business" use distinction into the Gun Control Act. Scherer cites a 1979 letter from an official at BATF, which in part describes the Bureau's policy that a gun dealer may sell his personal firearms without recording them. Scherer asserts that his unrecorded sales were of "personal" weapons and that he has thus been convicted of an act which the government does not consider a crime.

No new facts are brought to light, however, which call for a re-examination of our decision on the direct appeal of his case. The 1979 letter merely restates the position outlined in Industry Circular 72–30, and does not overrule our earlier holding. Since no new circumstances appear, and since the issue has been fully argued and decided previously, we see no reason to disturb our previous decision. *United States v. Orejuela,* 639 F.2d 1055, 1057 (3d Cir. 1981).

### V.

The third category of Scherer's arguments deals with allegedly unlawful searches of his property by BATF agents. Scherer claims that a newly discovered incident, the warrantless observation of his property in late June or early July, 1972, from a post somewhere northwest of his house, amounted to an unlawful search. With respect to two warrantless entries of his property by an agent in September, 1972, Scherer asserts that he has recently discovered that the agent, before entering, was aware that two Thompson submachine guns were in his barn. The effect of this awareness, Scherer argues, is to make the searches unlawful under the Fourth Amendment. Further, Scherer contends that the evidence used against him at trial carried the taint of these illegal searches, since the June-July search produced information which led to the September entries, which in turn led to the issuance of the search warrant pursuant to which evidence was seized and used to convict him. Therefore, he argues, his conviction must be vacated.

The chain of events which Scherer traces between the searches and the seizure of evidence under the warrant is weak. While he asserts that the June-July observation provided information which led to

the September searches, he does not point out, and apparently does not know, what that information was. In fact, it appears from other evidence, that the information relayed by an informant after his dealings with Scherer was the underlying reason for the September searches. Moreover, this court held on direct appeal that probable cause existed to support the eventual issuance of the search warrant apart from information gained in the September entries. The information gained in September was merely corroborating. *Scherer I*, 523 F.2d at 376–77. Thus, it is far from clear that the June-July observation resulted in the September searches, and it cannot be said that the September searches led to the issuance of the warrant. The effect of this flaw in Scherer's argument, however, need not be examined, since Scherer failed to show that any of these searches was in violation of the Fourth Amendment.

Scherer cites the deposition of a BATF agent as evidence of government intrusion on his property.[6] The district court noted that

> it appears that the agents set up an observation post ... which was west-northwest of Mr. Scherer's house. The agents seem to have been east of an open field.... No distances are given ... but the deposition reveals that a railroad track lies west-northwest of the house, and the agents were a *considerable distance from the railroad tracks.*

*Scherer III*, 74 CR 99 at 9–10 (emphasis added). The Fourth Amendment protects against warrantless intrusions where an individual has a "legitimate expectation of privacy." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), citing, *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967); *Wilson v. Health and Hosp. Corp.*, 620 F.2d 1201, 1208 (7th Cir. 1980). While the home is clearly protected,[7] there is insufficient evidence to find that the surveillance post was on Scherer's property or, if it was, that it was within the constitutionally protected curtilage surrounding his house. *See United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292, 1295–97 (7th Cir. 1976), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977).

Moreover, Scherer does not show that the observation produced any information useful to or used by the government in prosecuting him. Although Scherer asserts that the agents were looking for "things ... in the house or right around the house" from this observation post, he fails to show what, if anything, was observed. The results of the surveillance were not incorporated in the agent's affidavit supporting the issuance of the September warrant.

Scherer's assertions regarding this incident amount to little more than speculation. The mere allegation that the observation might have been in violation of the Fourth Amendment is not enough to show that Scherer is entitled to the extraordinary relief he seeks here. His new evidence fails to demonstrate that his conviction amounted to "a complete miscarriage of justice." *Hedman*, 655 F.2d at 815.

### VI.

Scherer also contends that a BATF agent violated his Fourth Amendment rights when the agent came onto his property on two occasions in September, posing as a cousin of the informer he accompanied. Scherer had invited the informer and his "cousin Jim Moore" onto the property to build duck blinds. On both occasions, once the two were on Scherer's farm, they were given broad permission by Scherer's wife to look around the grounds and in the barn for wood to build the duck blinds.

---

6. The only relevant testimony cited to us is:
   Q: When you say in a fixed position, you just took up a position then on the grounds somewhere, is that it?
   A: Yes.

7. The Seventh Circuit has held that the Fourth Amendment protects the home and the area within 75 feet of the home. *United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292, 1297 (7th Cir. 1976), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977).

 The agents were on Scherer's property by his express permission. A government agent may obtain an invitation onto property by misrepresenting his identity, and if invited, does not need probable cause nor warrant to enter so long as he does not exceed the scope of his invitation. *Lewis v. United States,* 385 U.S. 206, 212, 87 S.Ct. 424, 428, 17 L.Ed.2d 312 (1966); *United States v. Glassel,* 488 F.2d 143, 145 (9th Cir. 1973); *Scherer III,* 74 Cr. 99 at 9. Here, the agents were invited onto the property and there is no proof that they exceeded the scope of their invitation. The fact that the agents were aware before the visit that the two Thompson submachine guns were lying in Scherer's barn does not take this case out of the consent exception to the Fourth Amendment's warrant requirement. This is not a case where the agent entered with a warrant, knowing of and intending to search for items not described in the warrant, and continued to search after the enumerated items were seized, unlawfully exceeding the scope of the warrant. *See Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). Nor is it a case where the agent obtained entry by consent and then went beyond the scope of that invitation to search unlawfully for incriminating evidence. *See Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); *United States v. Dichiarinte,* 445 F.2d 126 (7th Cir. 1971). Rather, as in *United States v. Griffin,* 530 F.2d 739 (7th Cir. 1976), the agent here had reason to believe that evidence was on the property and, after obtaining an invitation to enter the property, came across the evidence in plain view while acting within the bounds of the invitation. The fact that the permission to search the property for wood was given by Scherer's wife, rather than by Scherer himself, does not change the result. *See Unit-*

*ed States v. Hendrix,* 595 F.2d 883 (D.C.Cir. 1979). The agent was lawfully on the property when he came across the two submachine guns in plain view.

### VI.

For the foregoing reasons, the judgment of the district court is affirmed.