UNITED STATES of America,
Plaintiff-Appellant,

v.

Henry WHITE, Defendant-Appellee.

UNITED STATES of America, Plaintiff,

v.

$38,394 U.S. CURRENCY, Defendant,

Henry White, Claimant.

Nos. 82-2022, 82-2110.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 1983.

Decided May 16, 1983.

Katherine Goldwasser, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellant.

Gail A. Niemann, Jenner & Block, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and NEAHER, Senior District Judge.*

CUMMINGS, Chief Judge.

This appeal is an outgrowth of our prior opinion reported in 660 F.2d 1178 (1981), where we upheld White's conviction for possession of heroin with intent to distribute. We also upheld the seizure of $38,394 [1] found in White's apartment because the arresting Drug Enforcement Administration (DEA) agents could reasonably have believed that the money was the fruit of prior heroin sales and consisted in part of pre-recorded government funds. However, we left open the question whether the search of White's apartment was lawful (660 F.2d at 1184 and n. 8) and remanded the case for such a determination.

Since the episode in question is fully described in our prior opinion, we will only repeat facts sufficient for disposition of White's motion for return of the $38,394 under Rule 41(e) of the Federal Rules of

---

* The Honorable Edward R. Neaher, Senior District Judge for the Eastern District of New York, is sitting by designation.

1. The total amount seized was $42,194 but $3,800 of that amount consisted of pre-recorded funds belonging to the government.

Criminal Procedure, which was renewed in the Government's forfeiture suit after we disposed of the prior appeal. The search in question took place on March 11, 1980, when Chicago police officers and DEA agents arrived at the apartment house at 4732 West Washington Street, Chicago. On this occasion, White and co-defendants Rogers and Council were arrested. While all three defendants were in the first-floor apartment, White agreed to waive his *Miranda* rights. Shortly afterwards on the back porch of that apartment, he gave consent to Sergeant Cline of the Chicago Police Department and DEA agent Gallagher to search his third-floor apartment for heroin.

Thereafter, Cline, Gallagher and other officers knocked on the door of the third-floor apartment and told Zenobia Anderson, who identified herself as White's wife, that White had been arrested on narcotics charges and had consented to a search of the apartment which he and Anderson shared. After they entered the apartment to commence their search, Cline asked Anderson if there was any money, jewelry or any similar expensive item in the apartment. She replied that there was some money in the closet and pointed to a flight bag there. When Cline picked up the bag and asked Anderson how much was in it, she told him $40,000. The bag was then opened in the kitchen and found to contain $42,194 in cash, including the pre-recorded government funds used in prior purchases of heroin by government employees. In the same closet the agents discovered stolen property, narcotics paraphernalia and approximately ten guns.

In its May 28, 1982, memorandum opinion and supplemental opinion of June 9, 1982, 541 F.Supp. 1114, 1119 (N.D.Ill.), the district court held that although White consented to the search of the apartment, the search of the travel bag and the seizure of the currency were unlawful; he therefore granted White's motion for return of the property. The court also dismissed as moot the government's civil forfeiture action under 21 U.S.C. § 881 which permits the government to retain moneys used in exchange for narcotics. We reverse.

*Voluntariness of Consent*

Defendant has cross-appealed as to the district court's finding that White's consent to search the third-floor apartment was voluntary. Judge Shadur found the following factors persuasive:

First, in addition to permitting the search, White waived his *Miranda* rights though his co-conspirators did not under identical conditions. Second, the consent took place during a quiet conversation on the back porch. Matters would have been very different had White been asked to consent just after the arrest in the living room, while he was faced by 12 agents, many with guns drawn. Finally, White has a long arrest record and has been in similar situations before. As part of the congeries of factors, those items particularly demonstrate White was able to choose voluntarily whether to let the agents undertake the search. 541 F.Supp. at 1117.

These factors are sufficient to support the district court's conclusion of voluntariness. *United States v. Watson,* 423 U.S. 411, 424–425, 96 S.Ct. 820, 828, 46 L.Ed.2d 598; *United States v. Jones,* 475 F.2d 723, 730–731 (5th Cir.1973), certiorari denied, 414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77.

To support his coercion argument, White relies primarily upon *United States v. Gillespie,* 650 F.2d 127 (7th Cir.1981) (per curiam), certiorari denied, —— U.S. ——, 102 S.Ct. 3495, 73 L.Ed.2d 1374. However, there five FBI agents and police officers with drawn shotguns and revolvers confronted Gillespie at his door, stating that they were looking for fugitives. In contrast, White gave his consent with no guns being drawn, while conversing on a back porch with two officers and after waiving his *Miranda* rights.

Our decision in *United States v. Sanchez-Jaramillo,* 637 F.2d 1094 (7th Cir.1980), certiorari denied, 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 is also inapt because that defendant's consent was the result of an illegal detention and, as then Judge Tone

stressed in his concurring opinion, defendant had been roused out of bed naked in his darkened bedroom by an agent with a flashlight and a gun, and his consent to search his suitcases was obtained while he was surrounded by agents already searching the apartment. No such factors were present here. Therefore, we uphold Judge Shadur's voluntariness ruling.

### Intent of Searching Officers Is Not Controlling

The government challenges the district court's finding that the search of the flight bag was invalid. According to the district court, White consented to let the agent search his third-floor apartment for heroin. Officer Cline, however, did not start the search until after asking Zenobia Anderson whether there was any money, jewelry or anything expensive in the apartment. This led the district court to invalidate the search because "it was Cline's specific subjective intent to search for money," which went beyond the scope of White's consent, 541 F.Supp. at 1118. But the "subjective intent" standard was rejected in Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 where the Supreme Court established "a standard of objective reasonableness without regard to the underlying intent or the motivation of the officers involved."

Applying this standard, we hold Cline's subjective intent to be immaterial. White consented to a search for narcotics, and the district court found that it would have been reasonable to think that heroin could be hidden in the flight bag. White's consent to search therefore extended to the flight bag. In the search for narcotics, the flight bag would of course have been opened, disclosing the cash, so that the "objective reasonableness" of the Scott test was satisfied. The situation is therefore unlike United States v. Dichiarinte, 445 F.2d 126 (7th Cir.1971), where we held that it was proper for government agents to look through defendant's personal papers to discover hidden narcotics but disapproved their reading and seizing those papers as an intrusion upon his right of privacy. In contrast to Dichiarinte, the search of White's flight bag constituted no greater privacy intrusion than what was authorized by his consent to a search for narcotics. Since the officers could reasonably consider that heroin was in the flight bag, the search of the bag was within the scope of White's consent.

Instead of being controlled by Dichiarinte, this case resembles the more recent case of United States v. Scherer, 673 F.2d 176 (7th Cir.1982), certiorari denied, 457 U.S. 1120, 102 S.Ct. 2935, 73 L.Ed.2d 1334. There a government agent and an informer posed as cousins and were given permission to look around defendant's grounds and barn for wood to build duck blinds. The agent knew before the visit that two Thompson submachine guns were lying in the barn. Despite that knowledge and the deception used to gain consent, we upheld the search although the consent had been limited to wood. White has not attempted to reconcile this case with Scherer.

We note Justice Stevens' statement in United States v. Ross, 456 U.S. 798, 820, 102 S.Ct. 2157, 2170, 72 L.Ed.2d 572, that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." Here the consensual search of the third-floor apartment extended to the entire area, including the flight bag in which narcotics could be found. It would be an absurd result to invalidate this seizure because of Cline's remark that he was looking for cash, since the money would have been shortly discovered anyway in the course of the agents' valid search for narcotics in the third-floor apartment.

The district court's orders granting White's Criminal Rule 41(e) motion and dismissing the government's forfeiture action are reversed.