Richard J. MURZYN, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. H83–0640.

United States District Court,
N.D. Indiana,
Hammond Division.

Jan. 16, 1984.

Richard J. Murzyn, pro se.

R. Lawrence Steele, U.S. Atty. by Evan Spangler, Asst. U.S. Atty., Hammond, for respondent.

## MEMORANDUM and ORDER

ALLEN SHARP, Chief Judge.

This case is presently before the court on a petition for writ of habeas corpus, filed by one in federal custody, pursuant to 28 U.S.C. § 2255. Both sides having fully briefed their respective positions,[1] this matter is now ripe for ruling. This is petitioner's second collateral attack on his convictions for substantive violations of the Dyer Act, 18 U.S.C. §§ 2312, 2314, and conspir-

---

1. Petitioner filed this application for federal habeas relief on October 13, 1983. On November 28, 1983, the Government filed its response to § 2255 Petition. On November 29, 1983, and December 9, 1983, petitioner filed supplemental documentation in support of his § 2255 petition. On December 20, 1983, the Government filed its Supplemental Response to Section 2255 Petition. There are no pending motions.

acy to violate that Act in violation of 18 U.S.C. § 371. Petitioner's conviction was affirmed on direct appeal in *United States v. Murzyn*, 631 F.2d 525 (7th Cir.1980), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981). Petitioner brought his first collateral attack on his convictions with the aid of retained counsel in *Richard J. Murzyn v. United States of America*, H82–779, on November 24, 1982 and that petition was denied by this Court on April 6, 1983. Petitioner has appealed the denial of that petition to the Court of Appeals.

In this § 2255 petition, petitioner claims four general grounds for relief:

(a) The Government's alleged failure to disclose to petitioner's counsel a state court deposition taken of Joseph Fitch, which allegedly reveals that Fitch perjured himself within that deposition and, therefore, would have provided impeachment material;

(b) That he received ineffective assistance of counsel at trial because his court-appointed lawyer:

(1) failed to object to the Court's instructions to the jury;

(2) failed to object to evidence of petitioner's prior bad acts offered in rebuttal to meet petitioner's entrapment/coercion defense;

(3) failed to file pre-trial motions to: (i) recuse the trial judge for bias as a result of the Court's acceptance of co-defendant Matthews' plea of guilty; (ii) strike petitioner's nickname "Mo Mo" from the indictment and that retained counsel failed to raise this issue on appeal;

(4) failed to challenge the Court's imposition of consecutive sentences; and that appellate counsel failed to challenge the consecutive sentences;

(5) failed to discover the the Fitch deposition before petitioner's federal trial began;

(c) That evidence of prior bad acts was improperly admitted on rebuttal to negate petitioner's entrapment/coercion defenses; and

(d) That the Government failed to prove all of the elements of the crimes charged in the indictment.

■ Most of petitioner's claimed bases for vacating his convictions in this petition were raised and litigated on petitioner's direct appeal and were decided against him. Consequently, petitioner is not entitled to a hearing or relief on issues which have already been adjudicated. *United States v. Orejuela*, 639 F.2d 1055, 1057 (3rd Cir. 1981), cited with approval in *United States v. Scherer*, 673 F.2d 176, 180 (7th Cir.1982), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2935, 73 L.Ed.2d 1334 (1983). Three general claims of error remain from the array stated in the petition: the alleged undisclosed deposition, the claimed denial of effective assistance of counsel and the alleged insufficiency of the evidence against petitioner. All of these claims are without merit.

■ Petitioner claims his conviction should be vacated because the Government allegedly failed to disclose, pre-trial or otherwise, the deposition of State Police Sergeant Joseph Fitch taken in connection with the prosecution of petitioner by the State of Indiana. Specifically, petitioner contends that Fitch committed perjury within that deposition by testifying that he recorded certain face-to-face conversations that he had with petitioner on a body tape recorder, but that he never actually wore the tape recorder on his body. Aside from the fact that these statements are not contradictory (the term "body recorder" describes a specific type of tape recorder, and does not necessarily mean the tape recorder was or must be worn on the body), they are not false statements or perjury. Petitioner does not challenge the authenticity of the tape recordings. Second, the tape recordings made on a body recorder by Sergeant Fitch of his conversations with petitioner were not used by the Government against petitioner at his trial. Third, even assuming, *arguendo*, that the Fitch deposition might have contained impeachment material, the discovery of impeaching material after trial does not require this Court to vacate petitioner's convictions.

*See, e.g., United States v. Jarrett,* 705 F.2d 198, 206 (7th Cir.1983); *United States v. Scherer,* 673 F.2d at 179. This conclusion is made even stronger by the Seventh Circuit's observation in its opinion on petitioner's direct appeal: "Murzyn had been shown by overwhelming evidence to have participated in the auto thefts." *United States v. Murzyn,* 631 F.2d at 530. Finally, the deposition was not in the possession of the Government or even known to it. Because the Fitch deposition was not known to or in the possession of the Government, it could not be required under the Jencks Act, 18 U.S.C. § 3500, to produce it. *Cf. Beavers v. United States,* 351 F.2d 507, 509 (9th Cir.1965).

*Ineffective Assistance of Counsel*

Petitioner claims he received ineffective assistance of counsel because his court-appointed trial counsel failed to seek recusal of the trial judge, failed to move to strike petitioner's nickname, failed to challenge the imposition of consecutive sentences, and failed to discover the Fitch deposition. Petitioner's retained appellate counsel is accused of failing to litigate the supposed prejudicial use of petitioner's nickname in the indictment, and of failing to challenge petitioner's consecutive sentences.

■ (1) "There is no merit to (petitioner's) contention that his (trial counsel) demonstrated incompetence by not asking the (trial judge to exercise his discretion) to disqualify himself" simply because he accepted petitioner's codefendant's guilty plea. *United States v. Oliveras,* 717 F.2d 1, 4 (1st Cir.1983). The trial judge is presumed to be impartial, *United States v. Patrick,* 542 F.2d 381, 391 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977), and petitioner has failed to present any facts which might meet his "substantial burden to overcome the presumption with factual allegations of personal bias stemming from extrajudicial sources." *United States v. Baskes,* 687 F.2d 165, 171 (7th Cir.1982). "(W)hat a judge learns in his judicial capacity— whether by way of guilty pleas of code-

fendants or alleged co-conspirators, or by way of pre-trial proceedings or both—is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification." *United States v. Patrick,* 542 F.2d at 390 n. 10.

■ (2) Petitioner complains that an effective trial counsel would have moved to have petitioner's nickname "Mo Mo" stricken from the indictment. Professor Wright, however, has observed that "defendants are usually unsuccessful in their attempts to have aliases expunged from an indictment." 1 Wright, *Federal Practice and Procedure 2d,* § 127 n. 28 (1982). The Government introduced evidence that petitioner's nickname was "Mo Mo" and that the undercover police officer always referred to petitioner as "Mo Mo" and never as "Richard", and that others referred to petitioner by his nickname. Petitioner's nickname was an integral part of the evidence identifying petitioner as a participant in the indicted crimes; as such, he has no "just cause for complaint at being so described," *United States v. Melekh,* 193 F.Supp. 586, 596 (N.D.Ill.1961). See also, *United States v. Escobedo,* 430 F.2d 14, 20 (7th Cir.1970), *cert. denied,* 402 U.S. 951, 91 S.Ct. 1632, 29 L.Ed.2d 122 (1971); *United States v. Johnson,* 298 F.Supp. 58, 65– 66 (N.D.Ill.1969). Petitioner's trial and appellate counsel were not required to make "baseless arguments to the court to protect (themselves) against later claims of incompetence." *United States v. Garcia,* 698 F.2d 31, 35 (1st Cir.1983).

■ Finally, in light of the overwhelming evidence, it cannot be said that petitioner was subjected to any real threat of prejudice by being described by his nickname as well as his given name in the indictment.

■ (3) Petitioner further claims that the failure of his trial counsel to discover the state court deposition of Sergeant Fitch establishes the ineffective quality of the assistance he received from his counsel. This argument is unavailing. The Govern-

ment did not know the Fitch deposition existed, nor was it in the Government's possession, custody or control at anytime before or during the trial. The primary way petitioner's trial counsel could have learned of the Fitch deposition was if petitioner had told counsel he had been the subject of a state court prosecution arising out of the same events. Even if petitioner's trial counsel was so advised, and thereafter failed to use the deposition at trial, there is no indication that anything in that deposition would have prevented petitioner's conviction in the face of overwhelming evidence of guilt. Nothing in the Fitch deposition suggests that it "would have allowed him to present his case in a manner likely to produce a different result." *United States v. Scherer*, 673 F.2d at 179, nor does the record in this case as a whole indicate that petitioner's "trial was so fundamentally flawed as to constitute a miscarriage of justice." *Id.*

■ Petitioner accuses both his trial and separately retained appellate counsel of failing to challenge his consecutive sentences. This contention is frivolous. Petitioner was convicted of transporting in interstate commerce three different automobiles on three different days between June 13, 1978 and August 10, 1978, in violation of 18 U.S.C. § 2312, and with the separate offense of selling those automobiles in violation of 18 U.S.C. § 2313. Petitioner was also charged with conspiracy to transport and sell those and other stolen automobiles in violation of 18 U.S.C. § 371. Congress has proscribed each of these three crimes in separate statutory sections and each involves proof of different legal elements. Thus, petitioner's conduct constituted seven distinct crimes for which Congress had provided separate punishment, thus indicating its intent that those crimes could be punished cumulatively. *See, United States v. Filipponio*, 702 F.2d 664, 666–67 (7th Cir.1983), and the authorities cited therein. The offenses did not merge into a single punishable offense as petitioner contends. Again, petitioner's lawyers were not required to make frivolous motions to con-

firm their professional competence. *United States v. Garcia*, 698 F.2d at 35.

Finally, petitioner contends that the Government failed to prove its case because (1) the Government did not prove he actually stole the cars or that he was present at their delivery to the undercover "fence," and (2) the Government did not explicitly charge petitioner as an aider and abettor under 18 U.S.C. § 2.

■ First, the Government need not explicitly allege that petitioner was an aider or an abettor, nor is it required to refer to 18 U.S.C. § 2 in the indictment. *See, e.g., United States v. McCambridge*, 551 F.2d 865, 871 (1st Cir.1977); *Wood v. United States*, 405 F.2d 423 (9th Cir.1968), *cert. denied*, 395 U.S. 912, 89 S.Ct. 1756, 23 L.Ed.2d 224 (1969). The conviction of one indicted as a principal will stand even though the evidence shows he was an aider or an abettor.

■ Second, under *Pinkerton v. United States*, 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), a proven conspirator, such as petitioner, is vicariously liable for the substantive offenses of his co-conspirators committed in furtherance of the conspiracy.

Indeed, in presenting his defense of entrapment/coercion, Murzyn himself admitted his involvement in the stolen car transactions. Claiming to be yielding to pressure from informant Ferguson and Sergeant Fitch, Murzyn testified that he arranged for the stolen cars through John Stechelski. Murzyn was informed by Fitch where Fitch was staying (the place where the stolen cars were to be delivered). Murzyn told Fitch when the cars would be delivered and Murzyn received payments for each of the cars from Fitch. Thus, Murzyn was an integral part of the theft operation, even by his own testimony. The Government clearly met its burden of proof, as the jury's verdict attests.

In addition to the above, petitioner has also submitted additional affidavits and exhibits to support his claims of ineffective assistance of counsel, although it is evident

from many of the affidavits and exhibits that they were in existence well before petitioner filed his first section 2255 petition and, in some instances, even before the direct appeal.

■ These exhibits and affidavits do not alter the substance of petitioner's claim. Petitioner has only embellished the earlier factual averments which he claimed demonstrated his trial counsel's ineffectiveness. Petitioner's repetitious litigation of this issue and his piecemeal presentation of the factual matters which allegedly support it is highly disfavored and should be discouraged. *United States v. Orejuela,* 639 F.2d at 1057; *United States v. Scherer,* 673 F.2d at 180. Petitioner is not entitled to present his claims in drips and drabs, attempting to parry each response by the government or each order by a court by ever gleaning some additional, inconsequential supposed error from the earlier proceedings.

A review of the materials submitted by petitioner will explicate the futility of his effort to use them to bolster his claim that his conviction should be vacated.

■ The affidavits of Dennis Matthews (dated October 8, 1981) and Russell Hall (dated September 21, 1981) aver that they never knew Murzyn or dealt with him in any way before trial. These affidavits in no way contradict the evidence which resulted in petitioner's convictions. The government presented overwhelming evidence that Murzyn participated in a conspiracy to transport and sell stolen cars and that, in fact, he sold several cars to State Police Sergeant Fitch during the course of an undercover investigation. Matthews and Hall were also a part of that conspiracy and worked as the thieves who stole and actually delivered some of those cars to undercover agents. The law did not and does not require the government to prove that Matthews and Hall knew petitioner or that they dealt directly with him. *United States v. Braverman,* 522 F.2d 218, 222 (7th Cir.) (conspirator need not know the identity or even the number of his confederates), *cert. denied,* 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975).

Petitioner offers the hearsay statement of Mr. Everly, reported in the affidavits of petitioner, Linda Baumgartner (dated June 30, 1983) and Shirley Mae Bell (dated June 30, 1983), to rebut "any information that Louis Ferguson was ever beaten," an apparent reference to Fitch's testimony on rebuttal, and to the affidavit of Joseph Fitch, submitted by petitioner on November 29, 1983, as Exhibit "A." These affidavits and the testimony they suggest Everly could have given at trial have no value because only Stechelski and Ferguson would have knowledge of whether Ferguson was ever beaten by Stechelski.

Similarly, the affidavit of Bruce Green is an attempt to suggest there is no motive for petitioner to ask Sergeant Fitch and Ferguson (the government's informant) to murder Green. Testimony concerning this transaction was offered by the government only as evidence of other bad conduct by petitioner in order to rebut his entrapment/coercion defense. Green's affidavit in no way negates the testimony that petitioner solicited Fitch and Ferguson to kill Green. It is highly doubtful that this evidence would have had any effect on the outcome of petitioner's trial.

Petitioner also relies on the testimony of his common-law wife, Shirley Bell, presented at petitioner's sentencing hearing, to establish that certain shrubbery and iron gates were purchased and not stolen. Again, evidence of the stolen character of the shrubbery and gates was presented only as evidence of prior bad acts to negate petitioner's entrapment/coercion defense. Moreover, even if the shrubs and gates had not been stolen, and petitioner merely lied to Sergeant Fitch that he had stolen them, these statements would still be probative of petitioner's predisposition to commit the indicted crimes. See, *United States v. Kaminski,* 703 F.2d 1004, 1009 (7th Cir.1983) ("Even if defendant had been fabricating his credentials as an arsonist and had never set a fire in his life, this would not negate a finding of predisposition. Predisposition is

a question of intent, not experience, and to the extent defendant engaged in puffery to sell his wares, this only serves to bolster a finding that he was predisposed . . .") Further, Shirley Bell was observed by this court in the courthouse during petitioner's trial and could have been called as a witness. Petitioner frequently consulted with his lawyer during trial and participated actively in his defense. If he wanted to present Ms. Bell's testimony and evidence of payment for the trees and gates, he certainly could have, but chose otherwise. In any event, the use of this evidence at trial would have had essentially no effect on the jury in the face of overwhelming evidence that petitioner was guilty of the indicted crimes. See, *United States v. Kaminski,* id.

Petitioner attempts to manufacture a conflict between the report of FBI Agent Freas which recorded a statement that Murzyn knew Fitch was a police officer all along and a later affidavit executed by Freas that records yet another remark made by petitioner to the effect that, if left alone with Ferguson (the informant), he would inflict great bodily harm on Ferguson. The presence of those statements in separate documents, neither in the same document, does not present a conflict in the facts and as impeachment material their value is nil.

Finally, petitioner claims that because a State Police Officer, Larry Stoller, testified that Murzyn was not a target of the investigation in February 1978 and a "police report" (petitioner's Exhibit D) indicates Murzyn was arrested in December of 1978 and his trial counsel failed to present facts that would have impeached Stoller and which would have showed that the State Police "mishandled" information. These contentions are nonsense. The December 1978 police report in no way contradicts Stoller and it in no way indicates that the State Police mishandled information. Finally, it does not indicate that petitioner was not predisposed to commit the indicted crimes.

For all of the above reasons, the writ is DENIED, petition DISMISSED. SO ORDERED.