**Ben KLEIN, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

Nos. 87–1769, 88–2692.

United States Court of Appeals, Tenth Circuit.

July 10, 1989.

Rod N. Snow, Dixon and Snow, P.C., Denver, Colo. (Steven Janiszewski, Dixon and Snow, P.C., Denver, Colo., was also on the brief) for plaintiff-appellant.

Gail Brodfuehrer, Dept. of Justice, Tax Div., Washington, D.C. (William S. Rose, Jr., Asst. Atty. Gen., Washington, D.C., Gary R. Allen and Robert E. Lindsay, Tax Div., Dept. of Justice, Washington, D.C., were also on the brief) for defendant-appellee.

Before HOLLOWAY, Chief Judge, SEYMOUR and BALDOCK, Circuit Judges.

HOLLOWAY, Chief Judge.

Ben Klein (Klein) was convicted of five counts of tax evasion in 1973. Related to those prior convictions, there are now two consolidated appeals before us, one challenging the trial court's denial of a petition for a writ of *coram nobis* (No. 87–1769) and one challenging the trial court's denial of a Rule 60(b) motion for a new trial in that proceeding (No. 88–2692). We affirm both rulings.

## I

### *Factual Background and Procedural Posture*

The lengthy and complex procedural posture of this case is relevant to both of these appeals. Klein's petition for a writ of *coram nobis* challenges his 1973 convictions under 26 U.S.C. § 7201 for evading taxes from 1966–1970. We affirmed those five convictions in 1975. *See United States v. Klein*, 35 AFTR 2d 75–1282 (10th Cir.1975), *cert. denied*, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975). We rejected there Klein's argument that he was not competent to stand trial and that the issue of his mental capacity to form intent to defraud should not have been submitted to the jury.

### A.

### *Klein's 1978 Motion for a New Trial*

In 1978 Klein filed a motion for a new trial in his criminal case on the ground of newly discovered evidence. The evidence consisted of information known to the Bureau of Narcotics and Dangerous Drugs (B.N.D.D.) and the I.R.S. before trial and not communicated to Klein. Klein had been investigated for possible involvement in narcotics trafficking. During the early part of its investigation the B.N.D.D thought that he had received income from financing narcotics deals. This belief was referred to the I.R.S., which ultimately decided not to pursue the matter. VII R. 166–167. The trial court denied Klein's

motion for a new trial, reasoning that it was untimely and that none of the new evidence would have been admissible or exculpatory. *United States v. Klein*, No. 73–CR–11 (D.Colo. April 10, 1978). Again we affirmed. *See United States v. Klein*, No. 79–1024 (10th Cir. May 11, 1979) (per curiam), *cert. denied*, 444 U.S. 925, 100 S.Ct. 264, 62 L.Ed.2d 182 (1979) (upholding the trial court's ruling that the motion was untimely).

### B.

### *Disciplinary Proceedings Before the Colorado Supreme Court*

Throughout the 1970's and 1980's Klein was involved in state bar disciplinary proceedings. In 1972, he was suspended from the practice of law for an indefinite period of time, but in no event for less than three years, for fabricating documents and presenting them to the Colorado Supreme Court Grievance Committee in defense of pending allegations of professional misconduct. *See People v. Klein*, 179 Colo. 408, 500 P.2d 1181 (1972) (en banc) (*Klein I*). In 1988, after various proceedings, the Colorado Supreme Court granted Klein's petition for reinstatement to the practice of law. *People v. Klein*, 756 P.2d 1013 (Colo. 1988) (en banc) (*Klein II*). The court found that Klein had regained his mental health (Klein had earlier asserted to the Committee that he was mentally disabled) and was competent to practice law. *Id.* at 1016.

### C.

### *Civil Proceedings in the Tax Court*

In 1980 Klein received a notice of deficiency in income tax and additions to tax for civil fraud penalties from 1962 through 1970. The Tax Court found that the government had failed to prove fraud for the years 1962 through 1965, but reasoned that Klein was collaterally estopped by his criminal convictions from denying fraud for 1966 through 1970. *Klein v. Commissioner*, 48 TCM 651 (1984). Klein's appeal to this court of the Tax Court's decision (No. 85–1245) has been abated pending disposi-

tion of these consolidated appeals. Our opinion affirming the Tax Court is being separately filed today. 880 F.2d 260.

### D.

*Denial of the Writ of Coram Nobis*

In support of his petition for *coram nobis* relief in the district court Klein argued that: (1) there was new evidence that the government withheld its belief that he was financing narcotics deals; and (2) there was new evidence that Chief Probation Officer Hyland had knowledge of Klein's mental condition, which both he and the prosecutors failed to disclose. After hearing testimony and receiving numerous exhibits, the trial court denied the petition. IX R. 2–7.

In his oral ruling the district judge found: (1) that Klein had the burden of proof; (2) that Klein delayed seeking the writ from 1978 to 1985 to the government's prejudice; (3) that the prosecution did not know of Hyland's information before trial and therefore had no duty to divulge it; (4) that Hyland, as a probation officer of the court, had no duty to divulge his knowledge of Klein's mental illness in the navy; (5) that the government's belief that Klein was financing narcotics deals was not exculpatory; (6) that the affidavits of Klein's 1973 trial attorneys, stating that the drug information would not have made a difference, were highly persuasive; (7) that introduction of the drug evidence would have been sheer folly; and (8) that Klein had failed to carry his burden of proof. IX R. 2–7. A timely notice of appeal was filed.

### E.

*Denial of the Motion for a New Trial*

As noted, in 1988 the Colorado Supreme Court granted Klein's petition for reinstatement to the practice of law, finding that he had regained his mental health and was competent to practice law. *People v. Klein,* 756 P.2d 1013, 1016 (Colo.1988) (en banc) (*Klein II*). Shortly thereafter, Klein filed a motion for a new trial in his proceeding for a writ of *coram nobis.* Klein argued that the Colorado Supreme Court in *Klein II* recognized that he had suffered

from mental illness, further supporting his incompetency defense to his 1966–1970 federal tax convictions. The federal trial court denied the motion and Klein filed a timely notice of appeal.

### II

*Analysis*

### A

*Denial of the Petition for a Writ of Coram Nobis*

■ While the writ of *coram nobis* was abolished by the 1946 amendment of Fed.R. Civ.P. 60(b) in civil cases, it retains its vitality in criminal proceedings. *United States v. Morgan,* 346 U.S. 502, 505–506 and n. 4, 512, 74 S.Ct. 247, 249–250 and n. 4, 253, 98 L.Ed. 248 (1954). *See* 28 U.S.C. § 1651 (granting federal courts authority to issue "all writs necessary or appropriate in aid of their respective jurisdictions...."). Because the writ continues litigation after final judgment and exhaustion of other remedies, relief should be "allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Morgan,* 346 U.S. at 511, 74 S.Ct. at 252. The writ is available only to "correct errors that result in a complete miscarriage of justice." *United States v. Williamson,* 806 F.2d 216, 222 (10th Cir.1986) (quoting *Korematsu v. United States,* 584 F.Supp. 1406, 1419 (N.D.Cal.1984)).

■ It is presumed that the proceedings leading to the conviction were correct, *see Morgan,* 346 U.S. at 512, 74 S.Ct. at 253, and the burden is on the petitioner to demonstrate that the asserted error is jurisdictional or constitutional and results in a complete miscarriage of justice. *United States v. Scherer,* 673 F.2d 176, 178 (7th Cir.1982), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2935, 73 L.Ed.2d 1334 (1982). *See also United States v. Addonizio,* 442 U.S. 178, 186, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979). When claiming newly discovered evidence, the petitioner must show that due diligence on his part could not have revealed the evidence prior to trial and that

the evidence "would have likely led to a different result." *Scherer,* 673 F.2d at 178.

### i
### Evidence Of Klein's Involvement in Narcotics Trafficking

The court held an extensive evidentiary hearing before denying the *coram nobis* petition. Klein produced evidence (much of it the same as that produced in the 1978 motion for a new trial and the tax case) of the B.N.D.D.'s investigation and the allegedly unwarranted suspicion held by it and the I.R.S. that he had received income from financing narcotics deals. He argued that if the government had disclosed its suspicion prior to trial, he could have introduced that evidence and shown the government's suspicion unfounded, thereby undermining the soundness of the government's investigation and its decision to charge him.

■■■ We reject Klein's argument for fundamental reasons. Klein failed to exercise due diligence in seeking the writ, a prerequisite to relief. *See Hirabayashi v. United States,* 828 F.2d 591, 604–605 (9th Cir.1987) (petitioner must show valid reasons for not attacking the conviction earlier). As the trial court found, Klein had access to the information relied upon here from 1978 to 1985. IX R. 4. During those seven years two key witnesses died. IX R. 4. We are persuaded that Klein failed to exercise due diligence in seeking the writ.[1]

■■■ Even assuming the exercise of due diligence, Klein's argument fails on the merits. It is important to remember that Klein's argument in support of his petition for a writ of *coram nobis* is premised upon an alleged denial of his constitutional right to a fair trial—on the ground that the prosecutors failed to disclose impeachment evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and the Jencks Act. We think it clear that Klein was not denied a fair trial.[2] For that reason alone, his petition for *coram nobis* relief necessarily fails.

Moreover, Klein failed to carry his burden in this *coram nobis* proceeding of demonstrating that the new evidence "would have likely led to a different result," *Scherer,* 673 F.2d at 178, so that the circumstances compel relief "to achieve justice." *Morgan,* 346 U.S. at 511, 74 S.Ct. at 252. It is dubious whether the drug evidence would have helped Klein. Indeed, the trial court in 1978, the Tax Court in 1984, and the district court in the instant case,[3] all concluded either that the evidence would not

---

1. We note also that *coram nobis* relief is not available to litigate issues already litigated; it is reserved for claims which have yet to receive their first disposition. *United States v. Keane,* 852 F.2d 199, 203 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989). Basic arguments made here, such as the claim of failure to disclose drug trafficking information, were rejected in 1978 when Klein filed a motion for a new trial.

2. It is true that *Brady* requires disclosure of impeachment evidence as well as exculpatory evidence if that evidence is both favorable to the accused and material to guilt or punishment. *United States v. Bagley,* 473 U.S. 667, 674–678, 105 S.Ct. 3375, 3379, 3382, 87 L.Ed.2d 481 (1985). We do not think the drug evidence is favorable to Klein, if admissible at all. And "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. at 3383. *Cf. United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976) (where no specific request for information is made by the defense, the information is material and must be disclosed only if its omission creates a reasonable doubt that did not otherwise exist about the defendant's guilt, evaluating the omission in the context of the entire record).

Viewing the drug evidence in the context of the entire record, *see Trujillo v. Sullivan,* 815 F.2d 597, 613 (10th Cir.1987), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987), and reviewing *de novo* the issue of materiality, *cf. Bowen v. Maynard,* 799 F.2d 593, 610 (10th Cir.1986), *cert. denied,* 479 U.S. 962, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986), we conclude that there is not a reasonable probability that the outcome would have been different had the drug information been disclosed to Klein.

3. The trial court here reasoned that the evidence "probably would have been devastating in terms of the jury's attitude toward Klein generally." IX R. 6. We agree. Evidence that a criminal defendant had financed drug deals would be dubious evidence to introduce on his behalf, if admissible at all. *See e.g.* Fed.R.Evid. 403.

have been admissible or that its admission would have damaged Klein.

It is true that there was testimony from several witnesses that the use of the evidence might have resulted in a different charge against Klein or a different verdict on the tax evasion charge.[4] But there were also affidavits from Klein's trial attorneys (attorneys Wald, Bugdanowitz and Abramovitz) stating that the evidence would not have changed their presentation of the defense. Appellee's Addendum, pp. 93–96. While these affidavits were prepared in 1978 in connection with the motion for a new trial and without all the information which subsequently became available, they were admitted below and the trial court found them persuasive, along with the other evidence presented at the hearing. IX R. 5. I.R.S. attorney Gehres, the

government's summary witness in the criminal trial, testified that the drug evidence would not have made a difference. VII R. 160–162, 165–167. And prosecutors Madden and Spelts also testified that the drug evidence would not have changed the outcome. VII R. 187, 202, 207–208. We note that the government did not introduce any evidence relating to the drug accusations at trial.[5] VII R. 221–224.

Having considered all the evidence, the trial court concluded that it would have been the "sheerest folly for defense counsel, Klein's defense counsel, to have introduced the subject of narcotics...." IX R. 5. As a matter in the factual area of trial strategy and evaluation of evidence by counsel, we do not think this finding is clearly erroneous.[6] We agree with Klein's

---

**4.** Attorney Abramovitz, who participated in Klein's defense in 1973 and who submitted an affidavit in connection with the motion for a new trial in 1978, said that his conduct in the case might have been different had he known about the drug evidence. VIII R. 254–256. Attorney Haddon said that the drug evidence would have made a difference and might have resulted in a different charge. IV R. 57, 69–70. Attorneys McAllister and Drexler (who practiced with Wald) also said the drug evidence might have resulted in a different charge or a different verdict. IV R. 66–67; VIII R. 273–274. Additionally, Judge Winner (a former United States District Court Judge and Chief Judge of the District of Colorado—now resigned) testified that the drug evidence and Hyland's testimony combined would probably have made a difference in the verdict. VIII R. 280–282. And the parties stipulated that former United States Attorney Henry would have testified, if called, that he would join Mr. Drexler, Judge Winner and Mr. Abramovitz in saying "with these events that he believes there could have been a different verdict." VIII R. 309.

We note that of these witnesses Abramovitz was the only one who was involved in Klein's 1973 trial. The others, including Judge Winner and former United States Attorney Henry, testified only as experts after reviewing materials provided by Klein's attorney.

**5.** This undisputed fact is particularly significant. Klein argues that the drug evidence is relevant for impeachment purposes. However, no evidence was presented at trial in 1973 that he was involved in narcotics trafficking. This new evidence, therefore, could only be used to impeach the soundness of the government's overall case, to show that the government's summary witness had erred in stating that no mistakes had been made, or to show that the government had a

mistaken belief during its pre-trial investigation. We do not think that any of these impeachment purposes demonstrate a complete miscarriage of justice.

Moreover, Klein cannot attack the indictment here on the grounds asserted. *Cf. Bank of Nova Scotia v. United States,* — U.S. —, 108 S.Ct. 2369, 2377, 101 L.Ed.2d 228 (1988) (an indictment which is valid on its face may not be challenged on the ground that evidence before the grand jury was unreliable); *United States v. Mechanik,* 475 U.S. 66, 70–73, 106 S.Ct. 938, 941–943, 89 L.Ed.2d 50 (1986) (errors which may affect the grand jury's decision to indict are not grounds for reversal where a defendant has been found guilty beyond a reasonable doubt by a petit jury); *United States v. Calandra,* 414 U.S. 338, 344–345, 94 S.Ct. 613, 618–619, 38 L.Ed.2d 561 (1974) (validity of indictment not affected by the character of the evidence considered).

**6.** We reject Klein's argument that the trial court's factual findings and conclusions are inadequate in form under Fed.R.Civ.P. 52(a). After hearing numerous witnesses and reviewing many exhibits the court made specific findings and conclusions. IX R. 2–7. These oral findings and conclusions are in accordance with Rule 52(a) and sufficiently indicate the factual basis for the court's ultimate conclusion. *Colorado Flying Academy, Inc. v. United States,* 724 F.2d 871, 877–878 (10th Cir.1984), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986); *Williams v. United States,* 267 F.2d 559, 560 (10th Cir.1959), *cert. denied,* 361 U.S. 867, 80 S.Ct. 128, 4 L.Ed.2d 106 (1959) (applying the clearly erroneous standard to factual findings in *coram nobis* proceedings). *See also Anderson v. Bessemer City,* 470 U.S. 564, 574–575, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985) (clearly erroneous standard applies to findings based

position that in assessing the possible impact of withheld evidence on a jury, and the materiality of the evidence, we should apply the *de novo* review standard. *Cf. Chaney v. Brown,* 730 F.2d 1334, 1345–1346 (10th Cir.1984), *cert. denied,* 469 U.S. 1090, 105 S.Ct. 601, 83 L.Ed.2d 710 (1984). Our assessment of the impact of such evidence in this context is the same as that of the district judge—disclosure of the information on financing of narcotics trafficking having been suspected, which Klein claims to have been improperly withheld, would not have had a favorable effect for Klein.

ii

### Evidence Relating to Klein's Competency

■ Klein argued in his criminal trial that he did not have the mental capacity to form the requisite intent to defraud and that he was legally incompetent. James Hyland (who had a master's degree in psychology but was not a trained psychiatrist) worked as chief pharmacist at a psychiatric observation unit in the Navy and observed Klein for six to eight weeks during 1945, the year of Klein's discharge. Hyland was the Supervising Probation Officer for the District of Colorado at the time of Klein's criminal trial and later became Chief Probation Officer. Hyland did not testify in the 1973 trial, but he did testify before the Tax Court by deposition (this testimony was admitted at the *coram nobis* proceeding below) and during the August 1985 hearing on the petition for a writ of *coram nobis.*

Hyland said that during his World War II service Klein was unable to function militarily, was disorganized, bewildered, hostile, and at times unaware of what was going on. Appellant's Addendum, pp. 30–31. He testified that Klein was diagnosed as schizophrenic, although this diagnosis was later changed to "personality disorder." *Id.* at 28. At the criminal trial Doc-

tor Miller, the court appointed psychiatrist, testified that while Klein was mentally ill he had the requisite mental capacity to form specific intent to defraud. VII R. 9. In forming this opinion, Doctor Miller relied in part on the apparent absence of naval records which might indicate that Klein suffered from a mental illness. VII R. 15. Miller said, however, that even had he known of Hyland's observations in the Navy, his findings regarding Klein's competency in 1973 "would not [have] been altered by Mr. Hyland's testimony in any way." VII R. 10.

Klein argues that Hyland's testimony would have helped to demonstrate a history of mental illness, thereby bolstering Klein's defense of mental incapacity and avoiding any claim that the mental incapacity defense was recently contrived. The argument fails because the evidence shows that Klein had knowledge of Hyland's information through his attorney, Mr. Wald, if not through his own experience with Hyland in the Navy.[7] The parties stipulated that Hyland talked with Wald prior to the criminal trial and that Wald was informed that Hyland knew Klein while in the Navy. IV R. 13. Hyland states in his affidavit of March 13, 1985 that he discussed his knowledge of Klein's background with Wald prior to the criminal trial. I R. 7, Exh. C. Hyland also testified at the August 1985 hearing that he had met with Wald prior to the criminal trial and discussed Klein's mental condition in the Navy. IV R. 18–26, 34–35. Furthermore, attorney Wald, in a letter to the Justice Department (dated December 22, 1972 and preceding the 1973 trial), makes reference to Klein's "long-existing psychotic condition" and to his "psycho discharge from the navy." I R. 7, Exh. D. And Wald himself sent a copy of a letter from Klein's psychiatrist to the Justice Department on January 11, 1973, in which Klein's psychiatrist states that obsessions and compulsions caused Klein's discharge from the Navy. I R. 7, Exh. E.

upon documentary evidence as well as testimony and where there are two permissible views of the evidence the fact finder's choice between them cannot be clearly erroneous).

7. Because Klein should be held to have had knowledge of Hyland's information prior to trial through his attorney, we need not reach Klein's argument that Hyland had a duty to reveal his knowledge of Klein to the court.

While the trial court did not specifically find that Klein had knowledge of the information on his mental condition in the Navy, we think the record plainly establishes such knowledge and precludes an argument that Klein has demonstrated, as he must, a complete miscarriage of justice. *Williamson,* 806 F.2d at 222. Obviously, Klein cannot show that the information concerning his mental capacity could not have been discovered by due diligence, *see Scherer,* 673 F.2d at 178, when the record shows that Klein himself had knowledge of the information.

Perhaps most importantly, Miller (whose testimony in 1973 was particularly important) testified at the *coram nobis* hearing that even had he known of Hyland's information, he still would have testified in 1973 that Klein was competent. VII R. 7–10, 12, 21–22. This undercuts Klein's argument that Hyland's testimony would likely have made a difference and, as noted earlier, that is the burden Klein carries here. *Scherer,* 673 F.2d at 178. We are mindful that several witnesses testified that Hyland's testimony could have made a difference in the verdict.[8] We are nevertheless convinced in view of Miller's testimony and that of several other expert and lay witnesses at the criminal trial, *see* n. 12, *infra,* that the testimony offered by Klein is not sufficient to show that Hyland's testimony "would have likely led to a different result ..." *see Scherer,* 673 F.2d at 178, concerning his mental capacity from 1966–1970 and his competency at the time of the criminal trial.

Klein's remaining arguments in appeal No. 87–1679 are without merit. His repeated references to our opinion in *Bowen v. Maynard,* 799 F.2d 593 (10th Cir.1986),

*cert. denied,* 479 U.S. 962, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986), are unpersuasive. In *Bowen,* the record established improper withholding of evidence; we held there was a reasonable probability that its disclosure would have led to a different result. *Id.* at 613. That is not the case here. We hold that Klein has failed to carry his burden of showing that the alleged errors below resulted in a complete miscarriage of justice. *Scherer,* 673 F.2d at 178. *See also Addonizio,* 442 U.S. at 186, 99 S.Ct. at 2240. Accordingly, we affirm the trial court's denial of the petition for a writ of *coram nobis.*

## B

### *Denial of the Motion for a New Trial*

#### i

#### *Rule 60(b)(5)*

Klein filed a motion under Fed.R.Civ.P. 60(b)(5),[9] seeking a new trial in his *coram nobis* proceeding. The motion was based upon the Colorado Supreme Court's decision in *People v. Klein,* 756 P.2d 1013 (Colo.1988) (*Klein II*). In *Klein II,* the court granted Klein's petition for reinstatement to the practice of law (he was suspended in *Klein I*) after concluding that he had regained his mental health and was competent to practice law. *Id.* at 1016. The court relied upon a Colorado Rule of Civil Procedure providing for reinstatement where there has been a demonstration of return to mental health and competence. *Id.* at 1025. In this appeal, Klein contends, *inter alia,* that the Colorado Supreme Court's opinions show that he had a mental illness during the tax years of the criminal

---

**8.** Abramovitz said that he would find it difficult to believe that Hyland's testimony would not have made a difference to the jury. VIII R. 244–245. Attorney Haddon said Hyland's testimony would have made a difference. IV R. 57. Attorneys McAllister and Drexler said Hyland's testimony might have resulted in a different verdict. IV R. 66–67; VIII R. 273–274. Additionally, Judge Winner testified that Hyland's testimony, combined with the drug evidence, probably would have made a difference in the verdict. VIII R. 280–282. And the parties stipulated that former United States Attorney Henry would have testified, if called, that Hy-

land's testimony could have resulted in a different verdict. VIII R. 309.

**9.** Rule 60(b) provides in part that:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application....

charges, that the illness caused his professional misconduct, and that he was later rehabilitated. The district court denied Klein's Rule 60(b) motion without a hearing.

 Klein's reply brief makes clear that he is arguing under Rule 60(b)(5) that "it is no longer equitable that the judgment [denying the petition for a writ of *coram nobis*] should have prospective application."[10] Reply Brief, p. 3–5. The standard for relief under this portion of Rule 60(b)(5) is an exacting one and requires a strong showing. Wright & Miller, *Federal Practice & Procedure:* Civil § 2863, pp. 207–208 (1973). The rule is not a substitute for appeal. *Schildhaus v. Moe,* 335 F.2d 529, 531 (2nd Cir.1964). Klein must show that some change in conditions makes continued enforcement of the order denying the petition for a writ of *coram nobis* inequitable. *De Filippis v. United States,* 567 F.2d 341, 343–344 (7th Cir.1977).

 Klein's argument is based upon an unwarranted characterization of the evidence at the 1973 tax evasion trial. Klein argues that the government introduced *People v. Klein,* 179 Colo. 408, 500 P.2d 1181 (1972) (en banc) (*Klein I*) to show that he was a perjurer and a manufacturer of false evidence. His suspension in *Klein I* for misconduct helped to show, he argues, intent to defraud. He also argues that Doctor Miller, the court appointed psychiatrist, relied on his 1972 suspension to claim that his depression was recent and resulted from the suspension. He contends that this undermined his incompetency defense.

It is true that *Klein II* says: "The evidence adduced at the hearing established that the respondent suffered from a seri-

ous mental illness from his teenage years through at least 1973, was still suffering some effects from that illness and at the date of the hearing was only marginally competent to proceed." *Klein II,* 756 P.2d at 1014. Pointing to the testimony of Doctor Miller, Klein argues that the question of his competency was a close one.

Assuming that *Klein I* was admitted in the 1973 criminal trial and was relied upon as Klein argues,[11] we think the district court was well within its discretion in denying the motion for a new trial in the *coram nobis* proceeding. *Navajo Tribe of Indians v. New Mexico,* 809 F.2d 1455, 1474 (10th Cir.1987) (the decision to deny Rule 60(b) relief will not be disturbed on appeal absent an abuse of discretion). First, Klein gives far more weight to *Klein I* as a basis for the jury's finding of intent to defraud than is appropriate, considering the record as a whole. There was strong evidence that Klein intended to evade taxes. There was evidence that he claimed numerous deductions as business expenses which were in fact personal expenses, such as the cost of a color television set for his girl friend; there was evidence that on numerous occasions Klein used cashier's checks to conceal assets; that his non-deductible personal expenditures for 1970 were more than three times his reported taxable income for that year; that from 1966 to 1970 his net worth increased from approximately $142,000 to $279,000, while his reported taxes decreased from $3,280 to approximately $320. Appellee's Addendum, pp. 9–12. Given the record as a whole, we think Klein's argument is meritless.

Klein also exaggerates the importance of *Klein I* to Miller's testimony in the criminal trial to show mental capacity. We note that *Klein I* does not mention the issue of

---

**10.** Klein is not arguing that "a prior judgment (*Klein I*) upon which it (the denial of *coram nobis* relief) is based has been reversed or otherwise vacated...." Rule 60(b)(5). Such an argument would fail because this application of 60(b)(5) is limited to cases in which the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel. It does not apply merely because a case relied on as precedent by the court in rendering the present judgment has since been reversed. Wright & Miller, *Federal Practice & Procedure:* Civil § 2863, p. 204 (1973). It is undisputed

here that *Klein I* was not the basis of the denial of the petition for a writ of *coram nobis* in the sense of res judicata or collateral estoppel.

**11.** The government contends *Klein I* was referred to but not admitted. Klein argues that the government admitted in its response to his motion for a new trial in the district court that *Klein I* was introduced into evidence. We will assume (without deciding this dispute over the state of the record) that *Klein I* was admitted in the tax evasion criminal trial.

mental capacity. At the criminal trial, both sides introduced substantial evidence on that issue, as our affirmance of Klein's conviction makes clear.[12] Klein does not (and cannot now) dispute that evidence, but instead gives unwarranted focus to the importance of *Klein I* to Doctor Miller's testimony. Any references to *Klein I* by Doctor Miller to show that Klein's behavior was caused by disciplinary proceedings was not a fundamental part of the prosecution's case so that the new determination in *Klein II* calls for a new trial under Rule 60(b)(5) from the denial of *coram nobis* relief.

Moreover, *Klein II* addressed the petition for reinstatement and discussed competency for professional practice. Indeed, the court specifically noted that a defense "based on the respondent's mental condition during the years 1966–1970 had been raised by the respondent during his federal tax evasion trial and had been rejected by the jury." *Klein II*, 756 P.2d at 1014. The 1988 determination in *Klein II* regarding mental capacity for purposes of reinstatement to the practice of law does not warrant a new trial on the *coram nobis* petition, where the issue of intent to defraud from 1966–1970 and competency to stand trial in 1973 were thoroughly explored and decided in the criminal case. For all of these reasons, we think that the district court was within its discretion in denying the Rule 60(b)(5) motion for a new trial and we uphold that ruling.

### ii
### *Rule 60(b)(6)*

 Alternatively, Klein argues that relief should have been granted under Rule 60(b)(6) and its "grand reservoir of equitable power to do justice in a particular case." *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir.1975) (en banc), *cert. denied*, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). Rule 60(b)(6) provides that a court may relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." Relying primarily on *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580–581 (6th Cir. 1985), Klein argues that *Klein II* mandates relief. We disagree. In *Overbee*, a diversity case, the Ohio State Supreme Court reversed itself on a legal issue which had been controlling in the federal court. *Id.* at 580. *Klein II* simply grants Klein's petition for reinstatement after finding that he had regained his mental health—it does not reverse *Klein I* on an issue of law. *Klein II*, 756 P.2d at 1016.

Relief under Rule 60(b)(6) is reserved for extraordinary cases. Wright & Miller, *Federal Practice & Procedure:* Civil § 2864, p. 219 (1973). *See Pierce*, 518 F.2d at 722–724; *Keane*, 852 F.2d at 202. Klein has not demonstrated that this is an extraordinary case calling for relief under the rule.

### III

Accordingly, the judgments in Nos. 87–1769 and 88–2692 are AFFIRMED.

---

**12.** As we noted in our 1975 opinion affirming Klein's conviction:

Two psychiatrists and two psychologists testified that Klein was not legally competent at the time of the offense. Their general diagnosis was that he was an obsessive-compulsive, paranoid schizophrenic. In addition, twelve lay witnesses and a handwriting expert gave testimony of erratic behavior and other incidents to support a finding of incompetency. This, of course, rebutted the presumption of sanity and the burden was on the Government to prove competency, which it undertook to do. Competency thus became an element of the offense as it had been for all practical purposes from the outset. *United States v. Bettenhausen*, 499 F.2d 1223 [34 AFTR 2d 74–5415] (10th Cir.); *Wion v. United States*, 325 F.2d 420 (10th Cir.).

Three psychiatrists and one psychologist testified as part of the Government's case that while Klein was possibly mentally ill, he was competent at the times the offenses were committed. This testimony was supported by that of several lay witnesses. What Klein asserts is that the evidence in favor of incompetency is so overwhelming that it was error to allow the question to go to the jury. We cannot agree.

*Klein*, 35 AFTR 2d at 75–1285.