**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 29 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

WILLIAM D. CARPENTER,

     Defendant-Appellant.

No. 01-5134
(D.C. No. 96-CR-168-C)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **KELLY** and **LUCERO**, Circuit Judges.

William D. Carpenter, the defendant-appellant, is currently incarcerated in

Oklahoma state prison. Upon completing his Oklahoma sentence, Carpenter will

begin serving a thirty-month federal sentence for his role in a conspiracy to obtain

fraudulent income tax refunds from the federal government, in violation of 18

U.S.C. § 286. On appeal, Carpenter argues that the district court erred in denying

---

[*]After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
Order and Judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

his petition for a writ of coram nobis, brought by Carpenter pursuant to the All Writs Act, 18 U.S.C. § 1691, but which the district court recharacterized as a 28 U.S.C. § 2255 habeas corpus petition.  We conclude that the district court erred in recharacterizing Carpenter's coram nobis petition as a § 2255 habeas petition, and, consequently, we treat his petition as one seeking a writ of coram nobis.  On the merits, however, we reject the arguments raised in Carpenter's coram nobis petition.  Consequently, we **AFFIRM** the district court.

I.     Background.

On January 27, 1997, Carpenter pled guilty to conspiring to defraud the United States by filing false tax refunds while an inmate at the Oklahoma Department of Correction's Conner Correctional Center.[1]  On May 14, 1997, the United States District Court for the Northern District of Oklahoma sentenced Carpenter to thirty months in prison and three years of supervised release and

---

[1]As best we can tell from the record on appeal, Carpenter, who conspired with at least one other Oklahoma inmate, Connor Hutton, defrauded the government by generating false 1040 forms using the names and social security numbers of certain individuals, many of whom were either fellow prison inmates or somehow connected to prison inmates.  Carpenter would then obtain information from legitimate W-2 forms, adjust the earnings and withholdings listed on these forms, and type new W-2 forms using names and social security numbers that corresponded to the false 1040 forms.  (Doc. 28, Ex. C, p. 8-9, 5-7.)  Upon receiving income tax refunds from the government, the individuals identified on the false 1040 and W-2 forms would then route the money to other people as directed by Carpenter and/or his co-conspirator(s).  (Id., p. 11.)  "Usually" the money was sent to a person with a "drug connection."  (Id.)

ordered him to pay $5,400 in restitution for defrauding the government of $91,240.06, an amount Carpenter apparently stipulated to in his plea agreement. (Aple. Br. at 4.). In addition, the district court ordered Carpenter to serve his prison sentence consecutively with separate sentences imposed by Oklahoma.

Nearly four years later, Carpenter filed a series of motions challenging the sentence imposed by the district court. In his first motion, filed on March 26, 2001, Carpenter moved for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c) (Doc. 14, p. 1.), which the district court denied on May 24, 2001. (Doc. 26.) On June 5, 2001, Carpenter then moved to have his § 3582(c) motion restyled as a petition for coram nobis relief (Doc. 28), a motion the district court rejected on June 15, 2001. (Doc. 29.) Finally, on July 17, 2001, Carpenter filed a petition for a writ of coram nobis. (Doc. 31.) The district court construed Carpenter's coram nobis petition as a § 2255 habeas petition, and thus subjected it to § 2255's requirement that any petition seeking a sentence modification be brought within one-year of the underlying conviction becoming final. (Doc. 32.) Because Carpenter filed his petition some four years after his conviction became final, the district court dismissed the petition as time-barred. (Id.)

Central to all of Carpenter's motions and petitions before the district court, and central to his appeal, is a document attached to an appendix the government submitted in its response to Carpenter's initial § 3582(c) motion. This document

summarizes forty-five false income tax filings that the government used in arriving at the $91,240.06 figure. The document, which is entitled a "Summary of Returns/Refunds," lists, among other things, the names of forty-five individuals, the social security numbers for those forty-five individuals, a return address for each individual, and the net refund received by each individual; next to each name, the sheet also lists a "year."[2]

In his pleadings before the lower court, Carpenter contended that this document demonstrated that he only defrauded the government of $26,544.56, not the $91,000 amount that was used in his sentence. (Doc. 28, p. 2.) In advancing this argument, Carpenter conceded that he conspired with Hutton to defraud the government on the first twenty-one returns listed on the sheet, which are associated with the years 1990, 1991, and 1992, but he alleged that the government misled the district court in using the twenty-second through the forty-

---

[2]Our reading of the record does not fully explain what this year represents. On the one hand, the listed year could stand for the year Carpenter and his co-conspirator[s] submitted the fraudulent return to the government, and some of Carpenter's initial arguments before the district court suggest this is how he read the document (see, e.g., Doc. 16 ("This document was merely a list of allegedly fraudulent individual tax returns with dates in which they were submitted to the IRS.") (emphasis added); Doc. 20, p. 2 (discussing when the returns were dated)), as might the document's title, "Summary of Returns/Refunds." As discussed below, however, the logic of Carpenter's argument depends upon (1) this year representing the year for which the return was filed, not the date on which the return was filed and (2) all returns for a particular year being filed during the subsequent year. For example, all returns associated with the year 1993 would have been filed the following year, in 1994.

fifth returns, which cover the years 1993 and 1994, in calculating the total loss. The basis for Carpenter's argument before the district court was that because he was placed in restrictive housing on February 16, 1994, and then sent to a separate Oklahoma prison located in the territory encompassing the United States District Court for the Western District of Oklahoma, he could not have filed these returns while in the geographical territory of the Northern District of Oklahoma. Therefore, he alleges that the district court that sentences him–the Northern District of Oklahoma–lacked subject matter jurisdiction over returns twenty-two through forty-five.[3]

Carpenter appeals the district court's denial of his coram nobis petition on two grounds. First, assuming that the district court properly characterized his motion as a § 2255 petition, he appears to argue that the district court failed to consider that the document constituted newly discovered exculpatory evidence under Brady v. Maryland, 397 U.S. 742 (1970), and, thus, would mean that the

---

[3]In his motions before the district court, Carpenter also alleged that because Hutton was placed in restrictive housing on February 16, 1994, their conspiracy ended on that date. Any returns submitted after that date, he contends, could not be part of the conspiracy to which he pled guilty. Carpenter's coram nobis petition, however, focused on his subject matter jurisdiction argument (see Doc. 31), as does his brief on appeal.

As touched on earlier, Carpenter's argument depends upon the assumption that the years listed on sheet stand for the year for which the return was filed, not the year that the return was submitted or that the named individuals received a refund, an inference that runs counter to some of Carpenter's early arguments before the district court.

one-year filing period did not begin to run until May 2001.[4]  Second, Carpenter seems to attack the district court's decision to recharacterize his coram nobis petition as a § 2255 petition, alleging that (1) the district court should have recharacterized the petition as one that would have allowed for an evidentiary hearing and (2) that "the district court had the option of hearing Appellant's petition on its merits as styled."  (Aplt. Br. at 8.)

II.    Analysis.

   A.    Recharacterization.

Although not as explicit as it could have been, we believe that under a generous reading of his opening brief, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam) (explaining that pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers"), Carpenter argued that the

---

[4]In his brief, Carpenter cites 28 U.S.C. § 2244 in support of his claim, perhaps thinking of § 2244(d)(1)(D), which states that the one-year period for filing a state habeas petition only begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Section 2244, however, specifically addresses successive habeas petitions and habeas petitions challenging state convictions.  From our reading of the record, there is no indication that Carpenter has filed a prior federal habeas petition, and it is clear that Carpenter was convicted in federal court.  Consequently, we construe his argument as falling under § 2255, which specifically addresses challenges to criminal sentences imposed by federal courts and, like § 2244(d)(1)(D), states that the one-year filing period for an initial habeas petition begins to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255.

district court improperly characterized his coram nobis petition as a § 2255 habeas petition. (See Aplt. Br. at 8 (arguing the district court should have recharacterized his petition differently and explaining that "[t]he district court had the option of hearing Appellant's petition on the merits").) We agree with Carpenter's contention.

As this Court recently explained, "[w]e have generally disfavored the recharacterization of non-§ 2255 motions filed by prisoners as § 2255 motions, even where the prisoner may be entitled to relief under § 2255 but is clearly not entitled to relief under whatever cause of action he as asserted." United States v. Lowe, 6 Fed. Appx. 832, 2001 WL 387432, at *3 (10th Cir. Apr. 17, 2001). Our hesitation to allow recharacterization stems from the fear that construing a motion as a § 2255 petition would lead courts to bar subsequent habeas petitions as successive. See id.; United States v. Kelly, 235 F.3d 1238, 1242 (10th Cir. 2000); see also 18 U.S.C. §§ 2244(b)(1)-(2), 2255 (precluding prisoners from asserting a habeas claim raised in a prior habeas petition and restricting the ability of prisoners to assert new claims in successive petitions). Consequently, this Court, like many of our sister circuits, has held that a district court may only recharacterize a prisoner's non-§ 2255 motion as a § 2255 petition if (1) the prisoner, "with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized," or (2) the district

court, having concluded that § 2255 is the appropriate mechanism for asserting the claim, gives the prisoner "the opportunity to withdraw the motion rather than have it so recharacterized." Kelly, 235 F.3d at 1242 (quoting Adams v. United States, 155 F.3d 582, 584 (2d Cir. 1998)); see also Lowe, 2001 WL 387432, at * 3.

In this case, there is no evidence in the record indicating that the district court either informed Carpenter of the potential adverse consequences associated with recharacterizing his coram nobis petition as a § 2255 petition or offered Carpenter an opportunity to withdraw his motion. Indeed, the record suggests that the district court first informed Carpenter of the recharacterization in the very order that found Carpenter's request for relief time-barred under § 2255. (See Doc. 32, p. 1 ("A petition to modify sentence is properly brought under 28 U.S.C. § 2255, and thus the Court must construe the petition under § 2255.").) If the district court felt a coram nobis petition was an inappropriate vehicle for challenging the sentence, the district court should have denied the petition on the merits and advised Carpenter that he should have filed a § 2255 petition. See, e.g., Birkett v. United States, No. 99 CV 1729(RR), 1999 WL 754151, at *3 (E.D.N.Y. Aug. 19, 1999). Having failed to do so, we reject the district court's recharacterization of Carpenter's petition, and we evaluate Carpenter's coram nobis petition on the merits.

B.    Merits of Coram Nobis Petition.

A writ of coram nobis is an "extraordinary remedy" and allowed "only under circumstances compelling such action to achieve justice." United States v. Morgan, 346 U.S. 502, 511 (1948); see also Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989) ("The writ is available only to correct error that results in a complete miscarriage of justice."(quotation marks omitted).)  Generally speaking, courts will only issue the writ to correct "errors of fact" that, through no negligence on the part of the defendant, were not part of the original record and that "would have prevented rendition of the judgment questioned." Lowe, 2001 WL 387432, at *1 (quoting Black's Law Dictionary 304-05 (5th ed. 1979)); see also United States v. Johnson, 237 F.3d 751, 755 (6th Cir. 2001) ("To be entitled to [coram nobis] relief, the petitioner must demonstrate (1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which would probably have altered the outcome of the challenged proceeding had it been known.").

Due to its exceptional nature, a petitioner must satisfy stringent criteria to obtain a writ of coram nobis.  For instance, the defendant must demonstrate that he exercised due diligence in raising the issue and that the information used to challenge the sentence or conviction was not previously available to him.  Klein, 880 F.2d at 254.  In addition, the prisoner must exhaust all otherwise available

remedies, which includes seeking post-conviction relief under § 2255. <u>Kennedy</u>, 237 F.3d at 755; <u>Goldstein v. United States Parole Comm.</u>, 940 F. Supp. 1505, 1508 (C.D. Cal. 1996) (explaining that prisoners in custody must challenge their sentences using § 2255). Finally, the writ is usually only applied in cases where the petitioner has served his sentence and is no longer in custody or has not yet begun serving the challenged sentence. <u>Lowe</u>, 2001 WL 387432, at *1; <u>Johnson</u>, 237 F.3d at 755 ("A prisoner in custody is barred from seeking a writ of error *coram nobis*."); <u>United States v. Igo</u>, 303 F.3d 317, 318 (10th Cir. 1962) (discussing how a prisoner may use a coram nobis petition to challenge a sentence for which he is not in custody).

Applying these requirements, we conclude that Carpenter's coram nobis petition is unavailing for a plethora of reasons. Procedurally, and contrary to the argument in his reply brief, Carpenter's petition fails because (1) he is currently in custody for his federal tax fraud conviction and (2) he has failed to exhaust § 2255 remedies available to him.[5] <u>Lowe</u>, 2001 WL 387432, at *1. As this Court and

---

[5]In his reply brief, Carpenter asserts, for the first time as best we can tell, that the district court could not entertain a § 2255 motion because he was not "in custody serving the sentence which the habeas petition is in reference to." (Reply Br. at 1.) Because Carpenter first raises this argument in his reply brief, it is waived, notwithstanding the fact that Carpenter is a pro se petitioner. <u>See Biogenics, Inc. v. Kazen</u>, 6 Fed. Appx. 689, 2001 WL 227415, at *2 & n.1 (10th Cir. Mar. 8, 2001); <u>Entrup v. City of Central, Colorado</u>, 173 F.3d 863, 1999 WL 157407, at *2 (10th Cir. Mar. 23, 1999); <u>see also Wright v. United States</u>, 139
(continued...)

other courts have previously explained, a petitioner is considered "in custody" under § 2255 for any sentence he is currently serving or for any sentence that "has been ordered to run consecutively to another sentence under which the defendant is in custody at the time of filing the challenge." United States v. Bustillos, 31 F.3d 931, 933 (10th Cir. 1994); see also United States v. James, 30 F.3d 142, 1994 WL 408131, at *2 (10th Cir. Aug. 1, 1994) (explaining that "the Supreme Court has read the 'in custody' requirement to allow a prisoner to seek habeas relief from a future consecutive sentence"); Peyton v. Rowe, 391 U.S. 54, 67 (1968) (holding that a "prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of [§] 2241(c)(3)"). Consequently, a prisoner currently in state custody may bring a § 2255 petition challenging a federal sentence that is scheduled to run consecutive to his state sentence. United States v. Simmons, 437 F.2d 156, 158 159 (5th Cir. 1971) (citing cases from the First and Eighth Circuits and explaining that "§ 2255 is available to a prisoner in state custody attacking a

---

<sup>5</sup>(...continued)
F.3d 551, 553 (7th Cir. 1998); French v. Beard, 993 F.2d 160, 161 (8th Cir. 1993); Mouradian v. John Hancock Co., 1989 WL 225052, at *1 (1st Cir. May 16, 1989). On occasion, we have entertained an argument raised for the first time in a pro se petitioner's reply brief where the opposing party "thoroughly briefed the issue." Springer v. Hustler Magazine, 198 F.3d 258, 1999 WL 979242, at *2 (10th Cir. Oct. 28, 1999). In this case, however, the government's brief simply suggests that Carpenter's petition was time-barred under § 2255 without discussing whether the district court had jurisdiction over the issue. (Aple. Br. at 8-10.) In any event, as explained below, Carpenter's "custody" argument fails on the merits.

[consecutive] federal sentence"); see also Harris v. United States, 12 F.3d 1100, 1993 WL 473689, at *1 (7th Cir. Nov. 17, 1993) (explaining that a § 2255 motion is the correct vehicle for a prisoner in state custody to challenge a consecutive federal sentence). Because Carpenter's federal conspiracy sentence is scheduled "to run consecutively with" state court sentences he is currently serving (Aple. Br. at 3-4.), he can seek § 2255 relief and, consequently, he cannot challenge the federal sentence through a coram nobis petition.[6] Johnson, 237 F.3d at 755.

Assuming Carpenter could file coram nobis petition, we find his petition deficient on the merits. First, Carpenter incorrectly asserts that the district court lacked subject matter jurisdiction over returns twenty-two through forty-five. In reality, Carpenter's argument does not amount to a claim that the federal government lacked subject matter jurisdiction to prosecute him for the returns listed next to the years 1993 and 1994; in fact, he acknowledges that the federal government could have prosecuted him (though perhaps not under a conspiracy theory) for the contested returns in the Western District of Oklahoma. (Doc. 27, p. 1.; Doc. 28, p. 2.) Substantively, therefore, Carpenter's argument appears to be an assertion that the Northern District of Oklahoma was the improper venue for dealing with returns twenty-two through forty-five, see Fed. R. Crim. P. 18

---

[6]As explained above, the fact that Carpenter should have brought his claim under § 2255 does not justify the district court's recharacterization of his coram nobis petition as a § 2255 petition. Lowe, 2001 WL 387432, at *3.

("Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed."); LaFave, Israel, and King, Criminal Procedure § 16.1(a) (distinguishing venue from jurisdiction), not that the Northern District lacked subject matter jurisdiction over the fraudulent returns. See 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the states, of all offenses against the laws of the United States."); see also LaFave, Israel, and King Criminal Procedure at § 16.4(a) (explaining that federal jurisdiction deals with the power of the federal government to "proscribe, prosecute, and punish conduct").

Unlike challenges to subject matter jurisdiction, venue challenges in the criminal context, like those in the civil context, are waiveable, and will be deemed waived by a defendant who pleads guilty. United States v. Calderon, 243 F.3d 587, 589 (2d Cir. 2001) (collecting cases and explaining that "[v]enue is not jurisdictional" and is waived by a "valid plea"), cert. denied, 121 S.Ct. 2616 (2001); United States v. Miller, 111 F.3d 747, 750 (10th Cir. 1997) ("A defendant can waive venue rights through inaction," such as failing to object to venue during trial."); United States v. Evans, 62 F.3d 1233, 1236 (9th Cir. 1995) (noting how a defendant's guilty plea waives the right to challenge venue). Therefore, by pleading guilty and being sentenced without ever objecting to the district court's

venue, Carpenter waived his right to challenge the inclusion of refunds twenty-two through forty-five.

Second, assuming Carpenter did not waive the venue issue, his petition fails because it does not "show that due diligence on his part could not have revealed the evidence prior to trial." Klein, 880 F.2d at 253. Essentially, Carpenter claims that the document in dispute revealed new information about the method used by the government in arriving at the $91,240.06 figure in 1997. Yet Carpenter points to nothing suggesting that he did not know he was being sentenced for defrauding the government of over $91,000 or that he inquired into how the government arrived at this amount.

Third, and perhaps most importantly, Carpenter's coram nobis petition does not demonstrate how the document Carpenter complains of "would have likely led to a different result" or sentence. Id. at 254 (quotation omitted). In fact, the government contends, and the district court found, that Carpenter stipulated to the $91,240.06 figure in his plea agreement. (Aple. Br. at 4; Doc. 22, p. 2; Doc. 26, p. 2.) (Carpenter's only response to this stipulation, as far as we can discern from our reading of the pleadings below, is a reassertion of his erroneous subject matter jurisdiction argument and a claim that he never pled to items twenty-two through forty-five. (Doc. 27, p. 1-2; Doc. 28, p. 2; Doc. 31, p. 2; Aplt. Br. at 5.)) In addition, Carpenter's grand jury testimony indicates that while at the Conner

Correctional Center (which he concedes is within the jurisdiction of the Northern District of Oklahoma (Doc. 16, p. 1)) he generated between $150,000 and $190,000 from filing false tax returns. (Doc. 28, Ex. C, p. 19.) Thus, regardless of the information contained in the challenged document, the district court had ample evidence upon which to sentence Carpenter for a $91,240.06 loss to the government.[7]

## CONCLUSION

In light of the record before us and existing law, we **AFFIRM** the district court's denial of Carpenter's petition for coram nobis relief.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

---

[7]For these same reasons, we find Carpenter's <u>Brady</u> argument unconvincing.